IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENISE MINTER, ET AL.           *

    V.                          *    CIVIL NO. WMN-07-3442

WELLS FARGO BANK, N.A., ET AL.  *

## MEMORANDUM OPINION

Before the Court is Defendant Long & Foster Real Estate, Inc.'s Motion for Protective Order to Preclude, Postpone, and/or Limit the Deposition of P. Wesley Foster, Jr. (Paper No. 92) and Defendant Long & Foster Real Estate, Inc.'s Motion to File Documents Under Seal Pursuant to Local Rule 105.11 (Paper No. 90), specifically the motion, memorandum and exhibits supporting the motion for protective order.  The matters are fully briefed. No hearing is necessary. Local Rule 105.6.  For the following reasons, the Court shall DENY in part, and GRANT in part Long & Foster Real Estate, Inc.'s motion for protective order and DENY Long & Foster Real Estate, Inc.'s motion to seal.

### DISCUSSION

This is a class action in which plaintiffs allege that Wells Fargo, in conjunction with Long & Foster Real Estate, Inc. ("L&F"), created Prosperity Mortgage - a sham Affiliated Business Arrangement ("ABA") - to facilitate the collection of unlawful referral fees and kickbacks. (Paper No. 18, 2.) According to plaintiffs, Prosperity is not a mortgage company, but rather a

"conduit" through which L&F receives kickbacks for referring
mortgages to Wells Fargo. (<u>Id.</u>) Unsuspecting borrowers
essentially pay the referral fee disguised as legitimate charges,
for which they receive no additional goods or services – a
practice plaintiffs assert violates state and federal laws. (<u>Id.</u>)
At the helm of L&F is P. Wesley Foster Jr. (<u>Id.</u> at 15.) Although
his level of involvement in L&F and Prosperity operations is
disputed, there is evidence that he has played a significant role
in steering L&F agents to use Prosperity and that he has a
significant economic interest in both companies.  (<u>Id.</u>)

## Motion to Seal

Long & Foster moves that the following documents, filed in
support of its motion for protective order, be filed under seal:
1) L&F's Motion for Protective Order to Preclude, Postpone,
and/or Limit the Deposition of P. Wesley Foster, Jr.; 2) the
Memorandum of Law in Support of the Motion for Protective Order;
3) the Declaration of P. Wesley Foster, Jr. Dated February 2009
("Foster Declaration"); 4) the Declaration of Jay N. Varon dated
February 20, 2009 ("Varon Declaration"); and 5) three additional
exhibits accompanying the Motion and Memorandum of Law which are
comprised of correspondence between counsel (specifically
exhibits 2, 4 and 5). (Paper No. 90, 1.) For the reasons

discussed below, the Court hereby DENIES the motion.[1]

Local Rule 105.11 requires that a party seeking to seal documents offer reasons supported by specific factual representations justifying the sealing.[2] The common law presumes the right of the public to inspect and copy all judicial records. Virginia Dep't of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004); see also Richmond Newspapers, Inc. V. Virginia, 448 U.S. 555, 580, n. 17 (1980)(noting "that historically both civil and criminal trials have been presumptively open").  "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access."  Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988).  Ultimately, the decision whether to allow public access to judicial records is a matter of the district court's "supervisory" and discretionary power. Id. (citing Nixon v. Warner Communications, Inc., 435 U.S.

---

[1] This opinion and the documents at issue will remain under seal until L&F has exhausted any appeal of this judge's decision in this Court.

[2] Local Rule 105.11 states: Any motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) and explanation why alternatives to sealing would not provide sufficient protection. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials. Upon termination of the action, sealed materials will be disposed of in accordance with L.R. 113.

589, 598-99 (1978)). But the right of access may only be abrogated in "unusual circumstances." Id. (citing Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988)).

When the First Amendment provides a right of access, the district court may seal documents only "on the basis of a compelling government interest," a higher standard than described in the preceding paragraph. Id. (internal citations omitted). The First Amendment right of access has been held expressly to apply in criminal cases, and to materials made part of a dispositive motion in civil cases. Id. at 576; see also Rushforth v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)(opining that the more rigorous standard applies to documents made part of dispositive civil motions).

There is no reason to assume that the First Amendment protection does not apply even more broadly, to non-dispositive motions and materials, such as those at issue here. In fact, existing precedent suggests this broader reach. In Richmond Newspapers, Inc. v. Virginia, the Supreme Court held that the right of the public to attend trials is implicit within certain First Amendment guarantees. 448 U.S. 555, 578-80 (1980). "[A] presumption of openness inheres in the very nature of a...trial under our system of justice." Id. at 573. Courts have interpreted Richmond Newspapers broadly, and "make little distinction between

4

the right of access to court proceedings and the right of access to court records." Anne-Therese Bechamps, Sealed Out-of-Court Settlements: When Does the Public Have a Right to Know?, 66 Notre Dame L. Rev. 117, 135 (1990) and cases cited therein.  "These courts understand Richmond Newspapers to recognize the public's general right to receive information within a court's control." Id. at 136. Indeed, "in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." Gannett Co. v. DePasquale, 443 U.S. 368, 386 n. 15 (1979).

In Virginia Dep't of State Police v. The Washington Post, the Fourth Circuit stated that it has "never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion."  The Court nonetheless continued that "proceedings in civil cases are traditionally open." Washington Post, 386 F.3d at 580 (citing In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986)); see also In re Grand Jury Subpoena, 836 F.2d 1468, 1475, n. 11 (4th Cir. 1988)("Sealing the discovery process in civil proceedings... sacrifices the traditional interest of the public in obtaining access to civil proceedings..."). Ultimately, however, the Fourth Circuit declined to reach the question on the record before it. Id. at 580. Although the Fourth Circuit thus has not explicitly held that a First Amendment right of access exists

with regard to non-dispositive civil motions and hearings, the precedent strongly favors that view, with the higher burden for sealing.

Even if the First Amendment right of access does not apply to these non-dispositive motion papers, L&F's motion easily fails under the less stringent common law right of access.[3] Defendant has failed to demonstrate any "countervailing interest [that] heavily outweigh the public's interest in access." Rushford, 847 F.2d at 253.

In ruling on a motion to seal, "[a] district court must [also]...weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Washington Post, 386 F.3d at 576 (internal citations omitted). In simpler terms, if the Court decides to seal documents, it has to explain itself in a complete and thorough manner. "Courts have a duty to protect the public" right of access. Tobacco Technology, Inc., v. Taiga International, 2007 WL 172524 *1 (D. Md. Jan. 17, 2007). The

---

[3] For an informative history exploring the roots of both the common law and First Amendment rights of access, see the discussion in Publicker Industries, 733 F.2d at 1067-70.

public notice and opportunity to challenge requirements are
easily met by allowing time for objections to be made, once a
motion to seal has been filed. See Padco Advisors, Inc. v.
Omdahl, 179 F.Supp.2d 600, 614 (D. Md. 2002)(opining that since
the motion had been on the docket for an amount of time
sufficient to allow for objections to be made, the notice and
objections requirements had been met). This is why Rule 105.11
states that the Court "will not rule upon the motion until at
least 14 days after it is entered on the public docket." Local
Rule 105.11. A sufficient amount of time has now passed to allow
the Court to rule on the instant motion.

Defendant L&F must meet a heavy burden. Defendant asserts
that its motion to seal should be granted, because the materials
contain highly sensitive information of a personal and commercial
nature. (Paper No. 90, 2-3.) The cases cited by L&F are not
persuasive for a number of reasons, including that most involve
unopposed motions. See Briggs v. Marriott International, Inc.,
368 F.Supp.2d 461, 463 (D. Md. 2005)(grants "uncontested" motion
in a footnote); Stratagene v. Invitrogen Corp., 206 F.R.D. 121,
122 (D. Md. 2002)(grants motion to seal "in light of the absence
of objection"); Padco Advisors, 179 F.Supp.2d at 614-15 (motions
to seal were "unopposed"). Here, L&F's motion to seal is
vigorously contested.

Moreover, the information that the movant attempts to seal

7

is not on its face "sensitive" medical or personal information or confidential trade secrets. Nor has movant through its declarations offered the requisite "specific factual representations" justifying secrecy.

## Sensitive Personal Information

Local Rule 105.11 requires that a party seeking to seal documents offer reasons supported by specific factual representations justifying the sealing, and the case law only allows sealing in unusual circumstances. Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). L&F misconstrues case law in support of its argument that the documents contain sensitive personal information. The court in Briggs v. Marriott International, Inc. granted a motion to seal, on account of sensitive personal information. 368 F.Supp.2d 461, 463 (D. Md. 2005). But the documents contained actual medical information and detailed medical records, filed in conjunction with a claim for disability insurance benefits. Id. The documents presently at issue are much different; to the extent the documents contain personal information about Mr. Foster, it is vague information related to Mr. Foster's age and stamina.

For example, in The Declaration of P. Wesley Foster, he claims to "have various health issues that flare up from time to time," and his "stamina has declined over the years..." (Paper No. 92-3, 2.) Another document - a letter written by Jay N. Varon

8

- points out the he is 75 years old and "works shorter days..."
(Paper No. 92-6, 2.) By no stretch of the imagination does this
information warrant secrecy, as intensely personal information.

## Sensitive Business Information

L&F also argues that the documents contain sensitive
business information, akin to "trade secrets," and therefore
should be sealed. (Paper No. 101, 3.) While trade secrets enjoy a
"broad definition," they must still be a "formula, pattern,
device or compilation of information which is used in one's
business, and which gives [the owner] an opportunity to obtain an
advantage over competitors..." 3 Jack B. Weinstein, Weinstein's
Federal Evidence § 508.04 (2d ed. 2009)(quoting Ruckelshaus v.
Monsanto Co., 467 U.S. 986, 1001 (1984)). That language,
particularly "formula, pattern, device..." suggests that trade
secrets are more than "sensitive business information," they are
sophisticated, innovative methods or inventions that are the
result of human creativity and ingenuity. Managerial structures
and general information regarding business operations - the type
of information sought to be protected here - fail to make the
grade. (Paper No. 101, 1-2.)

Padco Advisors, another case cited by defendant is
inapplicable. First, there the parties had agreed to sealing. See
179 F.Supp.2d at 614-15. Second, the Court found that the
parties' assertions of the trade secret nature of the documents

to be "prima facie" correct, as their action is based on enforcing a non-compete clause in an employment contract in order to protect those trade secrets. Id. at 614-615. The other cases cited by L&F are equally unpersuasive. L&F argues that the information contained in the documents is "tangential" to the merits of the case warranting sealing, as held by the Court in Stratagene. 206 F.R.D. at 122. The party in Stratagene sought to file a motion to dismiss under seal, for failure to obtain service of process within 120 days. Id. Therefore, the procedural basis for the motion was indeed "tangential" to the merits. Id. The current situation could not be more different; the documents go to the heart of the instant litigation. They discuss whether key executives possess unique, relevant knowledge, whether Prosperity is a legitimate business, and whether Mr. Foster and others encouraged L&F agents to steer customers toward Prosperity, for their benefit, not the clients. Far from being tangential, that information is critical to the litigation insofar as it goes to whether L&F engaged in improper business practices. Pittston Co. v. U.S., cited by L&F, is also easily distinguishable. 368 F.3d 385 (4th Cir. 2004). There, the parties had agreed to exchange "confidential, proprietary, commercial [and] financial data," for which the judge issued a protective order. Id. at 406. Relying on that agreement and order, the "BCOA" produced documents to "Pittston," which Pittston used in

its litigation, and then moved to unseal. Id. To prevent BCOA -
which was not a party in the litigation - from being harmed by
reliance on the court's protective order, the Fourth Circuit
affirmed the lower court's refusal to unseal the documents. Id.
Moreover, the documents exchanged in Pittson also contained
"proprietary" and "commercial" "data" - very different from the
soft information relating to "managerial structure" at issue in
the instant case. (Paper No. 101, 1-2.)

     On the other hand, in Sensormatic Security Corp. v.
Sensormatic Electronics Corp., the Court stated that "[t]he
documents that the parties seek to seal involve memoranda,
depositions, contracts, and other business records." 455
F.Supp.2d 399, 437-38 (D. Md. 2006). The motions to seal were
unopposed. Id. Even so, the Court refused to seal the documents,
stating that the mere existence of a confidentiality order
protecting confidential information, does not guarantee a right
to seal all documents claimed to be sensitive. Id. More is
required by Rule 105.11: "specific factual representations." Id.
Such specific factual representations have not been offered by
L&F, and the documents appear even less sensitive than the
"contracts, and...business records" discussed in Sensomatic.

     L&F claims to have offered specific factual representations,
and states that "short of listing all of the personal and
commercially sensitive pieces of information contained in the

documents and explaining how a competitor could use them to its advantage," L&F has done everything it "reasonably can do." (Paper No. 101, 5.) The Court disagrees. The law discussed above requires a movant to explicitly identify information akin to trade secrets, and describe how its release will result in an unfair commercial disadvantage. Currently, L&F does little more than identify the documents, and assert that they contain information relating to "ownership structure" and other equally vague topics. (Id.)

The documents may contain information relating to Mr. Foster's involvement with Prosperity, which goes to the heart of this litigation, but no assertion is made that this information is not in the public record or more importantly, no rationale is given as to why certain facts are "sensitive" and will result in a competitive disadvantage. (See Paper No. 92-2.) The Declaration of P. Wesley Foster (Paper No. 92-3), the Declaration of Jay N. Varon (Paper No. 92-8), and the other exhibits are likewise completely void of highly sensitive trade secrets. At most, they discuss Mr. Foster and his role in drafting the October, 2007 memorandum. (See id.) The Court finds L&F's claim – that the release of such information threatens to place L&F at a "competitive disadvantage" – unpersuasive. (Paper No. 90, 2.) This is not the type of sensitive business information or trade secrets that courts shield. What the movant is essentially saying

12

-- stripped to its essentials -- is that it does not want the information it uses in defense of this case to be public, as it feels it would be detrimental to its financial interests in the business community. This urge for secrecy is incompatible with the public resolution of business disputes in our open judicial system. Lawsuits and their conduct are of interest to Main Street and Wall Street. Simply because information revealed or used in litigation is arguably detrimental to the financial or business interests of a party does not make that information "sensitive" or a trade secret.

The Court sees no unusual circumstances presented by L&F warranting the need for secrecy. The interest of the Court in protecting the public's right of access - its right to judge the product and determinations of the Court - is not outweighed by the defendant's interest in having the documents sealed. Having so determined, it is unnecessary to consider alternatives to sealing, such as redaction.

For the foregoing reasons, the court DENIES L&F's Motion to File Documents Under Seal Pursuant to Local Rule 105.11.

### Motion For Protective Order

Plaintiffs seek to depose P. Wesley Foster, and L&F claims that the deposition is an effort to "harass and burden Mr. Foster and Long & Foster Real Estate." (Paper No. 92-2, 1.) Defendant L&F seeks a protective order barring the deposition, brought

pursuant to Federal Rules of Civil Procedure 26(b) and 26(c).

Rule 26 provides, in pertinent part:

> **(b)(2)(C)** On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed...if it determines that: **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or **(iii)** the burden or expense of the proposed discovery outweighs its likely benefit...

Rule 26 also provides, in pertinent part:

> **(c)(1)** A party or any person from whom discovery is sought may move for a protective order...[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...

Under these rules, the Court has broad authority to limit discovery and prescribe alternative discovery mechanisms. <u>See</u> Fed. R. Civ. P. 26(c)(1)(A)-(H); <u>Furlow v. United States</u>, 55 F.Supp.2d 360, 366 (D. Md. 1999)("The Rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'") (citing <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984)).

Under 26(c), the Court may grant a protective order, which requires the moving party to demonstrate "good cause." Fed. R. Civ. P. 26(c). On that point, Wright & Miller states that there

must be "some plainly adequate reason therefor." 8 Charles Alan

Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 2035

(2d ed. 2009). Wright & Miller continues that:

> [C]ourts have insisted on a particular and
> specific demonstration of fact, as
> distinguished from stereotyped and conclusory
> statements, in order to establish good cause.
> This recognizes that the existence of good
> cause for a protective order is a factual
> matter to be determined from the nature and
> character of the information sought by
> deposition or interrogatory weighed in the
> balance of the factual issues involved in
> each action.

<u>Id.</u> (internal citations omitted). Thus, the standard for issuance

of a protective order is high. A motion seeking to prevent the

taking of a deposition is regarded unfavorably by the courts, And

it is difficult to persuade a court to do so. <u>Static Control</u>

<u>Components, Inc. v. Darkprint Imaging</u>, 201 F.R.D. 431, 434

(M.D.N.C. 2001)("By requesting the Court to prohibit plaintiff

from deposing a witness, defendant Darkprint assumes a heavy

burden because protective orders which totally prohibit a

deposition should be rarely granted absent extraordinary

circumstances.")(internal citations omitted); <u>see also</u> <u>SEC v. SBM</u>

<u>Investment Certificates, Inc.</u>, 2007 WL 609888 (D. Md. Feb. 23,

2007)(recognizing courts' general disfavor for completely

prohibiting depositions).

The movant makes two primary points in its filings. First,

L&F argues that Mr. Foster's stature as the Chairman and CEO of

the Long & Foster companies and his limited knowledge relevant to the complaint shields him from deposition, either entirely or only after the depositions of the 30(b)(6) witness and knowledgeable subordinate corporate officials. Second, L&F declares that Mr. Foster's health warrants a protective order, severely limiting the length and scope of his deposition. (See Papers. No. 92 and 97.) For the following reasons, the Court DENIES in part, and GRANTS in part L&F's Motion for Protective Order.

### **Mr. Foster is Not Protected by the "Apex" Deposition Rule**

L&F asserts that the Court should issue a protective order when litigants attempt to depose high-ranking executives "who have no personal knowledge of the subject matter of the litigation." (Paper No. 92, 5.) Such depositions are sometimes called "apex" depositions. The Fourth Circuit has never discussed, much less adopted, an apex deposition rule. But Wright & Miller has described the considerations underlying the "apex" executive principle:

> A witness cannot escape examination by claiming that he has no knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test his lack of knowledge, but a different result is sometimes reached when the proposed deponent is a busy government official, or a very high corporate officer unlikely to have personal familiarity with the facts of the case.

8 Charles Alan Wright & Arthur R. Miller, Federal Practice and

16

Procedure, §2037 (2d. 2009)(internal citations omitted). Some courts may be inclined to protect busy executives from being subject to depositions where the information sought may be more easily obtained from others. See, e.g., Folwell v. Hernandez, 210 F.R.D. 169 (M.D.N.C. 2002) (referring to such depositions as "apex" and opining that a court may appropriately seek to reduce the burden of a deposition on a corporate executive by limiting or precluding it); see also 10 FED. PROC., L. ED. § 26:197 (2005)("If the deponent is a high-ranking executive without unique personal knowledge of matters at issue, the court will grant a protective order to prevent such an important individual from being subjected to discovery abuse.").

Other courts around the country have applied variations of the apex deposition rule. See Roman v. Cumberland Ins. Group, 2007 WL 4893479 (E.D. Pa. Oct. 26, 2007)("Courts throughout the country have prohibited the deposing of corporate executives who have no direct knowledge of a plaintiff's claim when other employees with superior knowledge are available to testify. See, e.g., Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir.1979) (the leading case on "apex depositions," finding no error in district court's issuance of protective order postponing deposition of defendant's president where he had no direct knowledge of plaintiff's claim and other employees had greater knowledge); Thomas v. Int'l Bus. Machines, 48 F.3d 478, 483 (10th Cir.1995)

(affirming district court's grant of protective order prohibiting deposition of chairman of defendant's board of directors where chairman had no personal knowledge of plaintiff's claim and other employees had direct knowledge); Lewelling v. Farmers Ins. of Columbus, 879 F.2d 1212, 1218 (6th Cir.1989) (protective order affirmed where chairman and C.E.O. lacked personal knowledge); Mulvey v. Chrysler Corp., 106 F.R.D. 364, 366 (D.R.I.1985) (prohibiting the deposition of Lee Iacocca where he had no personal knowledge...”). These cases establish that the apex deposition rule is bottomed on the apex executive lacking any knowledge of relevant facts. The rule is aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head – the top official, not because of any special knowledge of, or involvement in, the matter in dispute. While Mr. Foster is CEO of L&F, he does not qualify as an “apex” executive for the purposes of this case.

As stated, the apex deposition rule is intended to protect busy, high-level executives who lack unique or personal knowledge. Preliminarily, Mr. Foster has asserted that he is no longer a busy corporate executive, but works a limited schedule. (Paper No. 92-3, 2.) A deposition would seemingly not interfere with any of his corporate responsibilities. More, while Mr. Foster claims not to possess unique knowledge, there is direct evidence to the contrary. Even if Dave Stevens drafted the

October 2007 memo urging agents to use Prosperity, Mr. Foster
stated in his affidavit that he approved and signed the October
10, 2007 memorandum.[4] (See id.)

Notably, plaintiffs have submitted media reports, apparently
based on interviews with Mr. Foster, that he had a much more
active role in the creation of the October memorandum that the
pinched role set out in his affidavit. (See Paper No. 92, Exh. 2
("Foster said he wrote the memo to make agents understand that

---

[4] Defendants stated that: "[a]s this court has already held in
the related Petry litigation, this memorandum could be of little, if
any, relevance here, because it was written well after plaintiffs'
transactions occurred...December 28, 2006 and...April 12, 2007."
(Paper No. 92, 8). The Court agrees that Petry v. Wells Fargo Bank's
material facts are closely related. 597 F.Supp.2d 558, 560 (D. Md.
2009). Indeed Judge Nickerson noted that this case and the Petry case
"involve[d] the same defendants and the same underlying set of
facts..." Id. at 563.
    First the transactions in this case (December 28, 2006 and April
12, 2007) are much closer in time to the date of the October 2007
memorandum than the transactions in Petry (December 2005). Second and importantly,
unlike Petry, this case is a putative class action of "[a]ll consumers
who have at any time obtained a federally related mortgage loan
originated by Prosperity Mortgage Company that was funded by Wells
Fargo Bank or any of its subsidiaries" (Paper No. 18, 20) and
cover[ing] "the period from the time that Prosperity Mortgage opened
for business until the resolution of this case." (Id. at 21). Third,
the memorandum, even though of a later date, demonstrates knowledge
and involvement of Mr. Foster which can be used to probe the relevant
areas of factual inquiry.
    The Court in Petry did state that the memorandum failed to raise
issues of fact, within the factual context of that case, when deciding
whether to grant a motion to dismiss as to certain claims. Id. at 566,
n. 11. The Court considered the memorandum in ruling on the motion to
dismiss plaintiffs' derivative claim against L&F Co. Id. ("Plaintiffs
argue that the statements of Wes Foster, the founder of L&F Co. and
L&F Real Estate, should create an issue of fact as to whether L&F Co.
participated in the alleged scheme that deserves further study.").
While the Court granted the motion as to all the claims against Long &
Foster Companies and primary claims and aiding and abetting claims
against L&F Real Estate (Paper No. 50), the Court found that
plaintiffs sufficiently pled a claim for civil conspiracy against L&F
Real Estate requiring discovery. (Paper No. 49, 13-14.) And, of
course, the Court rejected the motion as to the various claims against
Prosperity. (Paper No. 49, 7-12.)

each time they use Prosperity, they're helping Long & Foster, which in turn enables the company to provide better resources and more advertising for agents."); see also id. ("Foster said he was inspired to write the memo when David Stevens, president of affiliated businesses for Long & Foster, came into his office and told him that the company's agents had sent Bank of America over 2,000 loans to date this year.").)

Beyond the single topic of the memorandum, plaintiffs have provided in media reports a picture of Mr. Foster as very much involved in the management of L&F, and embroiled in the issue of L&F agents' referral to Prosperity, both before and after the dates of the transactions of the named plaintiffs. (See Exhibits 1-3 to Paper No. 92.)

Beyond Mr. Foster's apparent "hands on" involvement in the practices at issue in this putative class action, Mr. Foster has an enormous economic interest in Prosperity (approximately 50% ownership). (Paper No. 97-2, 3.) In a 2006 interview with Forbes magazine, Mr. Foster discussed Prosperity and vented that not all L&F agents were pushing the mortgage company, because some "don't want to give Wes Foster more money." (Paper No. 97-3.) L&F states that plaintiffs "have not demonstrated a sufficient nexus between their claims and Mr. Foster's memorandum." (Paper No. 92, 8.) The Court disagrees. Mr. Foster is an owner and CEO of a corporation accused of engaging in unfair business practices, involving a

20

mortgage company in which he has an enormous financial interest. He has discussed these issues in the media portraying himself as actively involved in the management of L&F including the referral issue. The nexus is obvious.

Thus, unlike the executives in the cases cited by L&F, Mr. Foster is not an executive whose only connection with the matter is the fact that he is the CEO of the defendant, the top official, where the buck stops on all corporate matters regardless of level of factual involvement or knowledge. Rather, he is alleged to be a highly involved, and highly interested party and the public record appears to substantiate that view. The Court rejects Mr. Foster's argument that his position in the defendant corporation constitutes good cause for preclusion of his deposition under Fed. R. Civ. P. 26(c)(1).[5]   In addition, L&F argues that the deposition should, at the very least, not occur until after a 30(b)(6) deposition, or deposition of other executives. They cite a couple apex deposition cases in support of that position. (See Paper No. 92, 10.) Such staging may be appropriate in a situation where there is no unique or personal

---

[5] Similarly, the Court does not find that movant has demonstrated that Mr. Foster's deposition should be precluded or limited under Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). It is neither (unreasonably) cumulative or duplicative. See (i) Plaintiffs have not had ample opportunity to discover Mr. Foster's knowledge by other discovery in the action. See (ii) The plaintiffs have not had ample time to obtain this information through the discovery process. See (iii) The burden on expense of the proposed discovery does not outweigh its likely benefit.

knowledge. See Baine v. General Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991)(opining that a "wait and see" approach requiring the deposition of lower-ranking executives before an apex executive, who lacked unique or personal knowledge, was appropriate). But again, that is not the case here. The "wait and see" approach is meant to protect high-level executives who lack unique knowledge. Id. Mr. Foster is no such executive. While he may lack personal knowledge of the transactions of the named plaintiffs, that is hardly determinative in a putative class action, such as this, challenging business practices which are alleged to have occurred during his tenure as Chair and CEO. Moreover, while the Court has the authority to grant such a request, it is disinclined to interfere with litigation strategy of counsel unless it is shown to cause undue burden. No showing has been made.

### Mr. Foster's Age and Health do Not Prevent His Deposition

L&F also argues that the deposition would be burdensome on account of Mr. Foster's age and health. (See Paper No. 92, 3-4; Exh. 1.) Defendant has not demonstrated good cause under Fed. R. Civ. P. 26(c)(1). Defendant has not shown "undue burden" or other ground under the rule for a protective order under Rule 26(c) or Rule 26(b)(2)(C). Defendant has not shown that plaintiffs can obtain the discovery they seek from another source that is "more convenient, less burdensome or less expensive."

First, the Court has concluded that Mr. Foster possesses some unique and personal knowledge. Deposition of another is not a substitute. Second, while others may share his knowledge on some subjects, there is no assertion that this deposition is unreasonably cumulative or duplicative. Under the circumstances, the burden on the defendant is essentially the same no matter which executive is deposed. Moreover, "[i]n seeking to prevent or delay a deposition by reason of medical grounds, the moving party has the burden of making a *specific and documented factual showing* that the deposition would be dangerous to the deponent's health." Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C. 1987)(emphasis added). In Medlin, the court opined that the court has a responsibility to undertake a detailed examination of whether a deposition would truly place a person's health at risk. Id. The "brief and conclusory" doctor's note submitted in Medlin was insufficient to compel a protective order. Id. See also Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C. 1988)(explaining that a protective order granted for health reasons must be supported by "detailed information" and may even require the examination of the deponent's physician). As discussed, Mr. Foster has failed to offer any compelling information describing how and why a deposition threatens his health, beyond claiming that he has health problems that "flare up from time to time," and his "stamina has declined over the

23

years." (Paper No. 92-3, 2.) Neither has he submitted an opinion from a medical professional.

On the other hand, where protective orders have been granted because of health concerns, there has been a real risk of harm, or tainted information. For example, in <u>Fonner v. Fairfax County</u>, the Fourth Circuit upheld the granting of a protective order, where the deponent was mentally retarded, tended to "parrot" his questioners, and was liable to become "traumatized." 415 F.3d 325, 331 (4th Cir. 2005). Mr. Foster has not asserted that a deposition will be anything more than tiring, and he certainly is not at risk of being traumatized. Even at 75, he still works at least a few days a week. (Paper No. 92-3, 2.) This does not constitute "good cause" for a protective order under rule 26(c), nor grounds for relief under Rule 26(b)(2)(C).

In recognition of Mr. Foster's age, pursuant to the Court's authority under Fed. R. Civ. P. 26 to impose less drastic limitations, the Court will GRANT L&F's motion in part, by ordering that deposition be limited to 5 hours on the first day, and 2 hours on the second. Plaintiffs have already agreed to move the deposition to Washington, D.C., a location more convenient for Mr. Foster than Baltimore, and have pledged to "be respectful of his health and age in the taking of his deposition." (Paper No. 92, Exh. 5.)

For the foregoing reasons, the Court DENIES L&F's Motion to

Seal. The Court also DENIES in part, and GRANTS in part L&F's
Motion for Protective Order. Despite the informal nature of this
letter, it constitutes an order of the Court, and shall be
docketed accordingly.


Date: 5/27/09                _____/s/_____
                                   Susan K. Gauvey
                                   United States Magistrate Judge