IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENISE MINTER, ET AL.              *

V.                                 *        CIVIL NO. WMN-07-3442

WELLS FARGO BANK, N.A., ET AL.     *

_____

BRADLEY PETRY, ET AL.              *

V.                                 *        CIVIL NO. WMN-08-1642

PROSPERITY MORTGAGE CO., ET AL.    *

<u>MEMORANDUM OPINION</u>

Before the Court are Plaintiffs' Motion to Compel
Production of Documents from Defendant Prosperity Mortgage
Company (Discovery Motion #1; Paper No. 108); Plaintiffs' Motion
to Compel Production of Loan Files and for a Protective Order
(Discovery Motion #2; Paper No. 111); and Plaintiffs' Motion to
Compel Production of Documents from Defendants Wells Fargo Bank,
N.A. and Wells Fargo Ventures, LLC (Discovery Motion #4; Paper
No. 139).  A hearing was held on December 1, 2009.  For the
following reasons, and as set forth in the Court's December 2,
2009 Order, the Court grants in part and denies in part
Plaintiffs' Discovery Motion #1, denies Plaintiffs' Discovery
Motion #4, and grants Plaintiffs' Discovery Motion #2.

## BACKGROUND

The Minter and Petry cases share similar factual bases, and have the same defendants.  Minter plaintiffs allege that Wells Fargo, in conjunction with Long & Foster Real Estate, Inc., created Prosperity Mortgage—a sham Affiliated Business Arrangement ("ABA")—to facilitate collection of unlawful referral fees and kickbacks.  (Paper No. 135, 3).  According to plaintiffs, Prosperity is not a mortgage company, but rather a "conduit" through which Long & Foster receives kickbacks for referring mortgages from Wells Fargo.  (Id.).  Unsuspecting borrowers essentially pay the referral fee disguised as legitimate charges, for which they receive no additional goods or services—a practice plaintiffs assert violates state and federal laws.  (Id.).  Petry plaintiffs allege that defendants acted as both a mortgage broker and a lender and, in doing so, unlawfully collected "finder's fees" for originated loans.  (Paper No. 135, 3); Md. Code Ann., Comm'l Law § 12-807.

Although plaintiffs in the two cases raise different legal claims (Minter plaintiffs raise claims under RICO and RESPA, while Petry plaintiffs bring claims under the Maryland Finder's Fee Act), plaintiffs suggest that discovery in the two cases would be duplicative and thus have conducted discovery only in Minter.  (Paper No. 135, 3).  Defendants do not concede to a complete overlap in relevant discovery, highlighting the

2

differences in claims in each case against Long & Foster

defendants and Walker Jackson Mortgage Company (Paper No. 137,

2-3) and the differences in conduct relevant to each case (Paper

No. 136, 2 n.2).  However, the documents at issue here are

requested only from Prosperity and Wells Fargo defendants and

the information sought is equally relevant to claims in both

cases, as it involves defendants' relationships and the fees

paid between them.

**DISCUSSION**

**A.   Motions to Compel Document Production**

As a threshold matter, the parties dispute the time period

for which plaintiffs are entitled to discovery.  Plaintiffs

request documents dating back to Prosperity's inception in 1993

on the basis of equitable tolling (Paper No. 108-4, 5-16; Paper

No. 119, 4-5), while defendants respond that discovery should be

limited to the longest statutory period applicable in this case

and that equitable tolling cannot extend that limitation (Paper

No. 108-3, 15; Paper No. 113, 13; Paper No. 114, 3-4).[1]

Prosperity claims that equitable tolling is not available

for claims brought under RESPA on the basis of the Fourth

---

[1] If the Court does find equitable tolling applicable in this case, Prosperity suggests that it follow Pedraza v. United Guaranty Corp., 114 F. Supp. 2d 1347 (S.D. Ga. 2000), essentially replacing the one-year statute of limitations for private claims under RESPA with the three-year statutory period provided for public claims.  (Paper No. 108-3, 15).  Neither Pedraza's holding nor its logic has been adopted by any other court and, certainly, this Court is not bound by it.

Circuit's unpublished 1989 opinion, <u>Zaremski v. Keystone Title Assoc., Inc.</u>, 884 F.2d 1391, which followed the D.C. Circuit's determination that RESPA's one-year statute of limitations was jurisdictional and therefore not subject to equitable tolling, <u>id.</u>, *1 (citing <u>Hardin v. City Title & Escrow Co.</u>, 797 F.2d 1037 (D.C. Cir. 1986)).  Not only is <u>Zaremski</u> unpublished, however, but the holding for which Prosperity cites it is also sparsely reasoned.  <u>Id.</u> (noting simply that it was "not persuaded to disagree with the D.C. Circuit's reasoning in <u>Hardin</u>").  The Fourth Circuit has not revisited this issue, and no circuit other than the District of Columbia that has cited <u>Zaremski</u> or <u>Hardin</u> on the issue of equitable tolling has done so with approval, and most with express disapproval.  See <u>Salois v. Dime Sav. Bank of N.Y., FSB</u>, 128 F.3d 20, 25 n.3 (1st Cir. 1997) (noting that <u>Hardin</u> came from the only court of appeals to hold that RESPA was not subject to equitable tolling, and declining to address the correctness of that ruling); <u>Ramadan v. Chase Manhattan Corp.</u>, 156 F.3d 499, 503 (3rd Cir. 1998) (rejecting the <u>Hardin</u> view on equitable tolling in a TILA claim); <u>Lawyers Title Ins. Corp. v. Dearborn Title Corp.</u>, 118 F.3d 1157, 1166-67 (7th Cir. 1997) (declining to follow <u>Hardin</u> in light of its inconsistency with other circuits' decisions regarding equitable tolling under TILA, as well as the Supreme Court's <u>Irwin</u> decision); <u>Ellis v. Gen. Motors Acceptance Corp.</u>, 160 F.3d 703,

706 n.2 (11th Cir. 1998) (noting that <u>Hardin</u>'s equitable tolling
discussion relied in incorrect assumptions regarding legislative
history).  <u>See also</u> <u>Kerby v. Mortgage Funding Corp.</u>, 992 F.
Supp. 787, 797 (D. Md. 1998) (noting that <u>Zaremski</u> did "not
suggest the kind of analysis the Fourth Circuit would have had
it intended to bind the lower courts," and rejecting and
extensively criticizing <u>Hardin</u>'s reasoning).  For the reasons
articulated in <u>Kerby</u>,[2] this Court follows the clear majority of
circuits and concludes that equitable tolling is available under
RESPA and therefore may effectively extend the statutory period
in <u>Minter</u>.[3]

Although plaintiffs do not advance an equitable tolling
argument in <u>Petry</u>,[4] the Court similarly finds that the <u>Petry</u>

---

[2] <u>Kerby</u> articulated its disagreement with <u>Hardin,</u> declining to follow
<u>Zaremski</u>, on the basis of <u>Hardin</u>'s
> citation to inapposite case law addressing sovereign immunity,
> which actually tends to support rather than undermine the case
> for equitable tolling under RESPA and TILA; its extraction of
> congressional intent by examining which part of which sentence
> the time limitations are contained while ignoring express
> congressional purpose in the plain text of the Acts; its apparent
> assumption that courts prior to the 1980 TILA amendment uniformly
> followed the supposed general rule on recoupment when in fact
> they were split; its disregarding of well-settled federal
> principles of equitable tolling as elucidated repeatedly by the
> Supreme Court; and its application of a 'jurisdictional'
> statutory canon both before and in the service of determining
> whether the limitations periods are in fact, as it framed the
> issue, 'jurisdictional.'
<u>Id.</u> at 797.

[3] At the December 1, 2009 motions hearing, counsel for Prosperity referred the
Court to <u>Phrasavang v. Deutsche Bank</u>, Civ. No. 09-64, 2009 WL 3047320 (D.D.C.
Sept. 23, 2009) (publication forthcoming), which unsurprisingly followed the
D.C. Circuit's <u>Hardin</u> opinion.  <u>Phrasavang</u> does not persuade this Court to
reach a different conclusion.

[4] Plaintiffs instead rely on extension of Maryland's 12-year "specialty"
statute of limitations to Maryland's Finder's Fee Act, which would entitle

claims are subject to equitable tolling.  MD. CODE ANN., CTS. & JUD. PROC. § 5-203 (providing for equitable tolling of a statute where a plaintiff's ability to discover his injury was obstructed by the adverse party's fraud); Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977, 987 (D. Md. 2002) (applying Maryland law in finding that "when a defendant's 'stealth [or] subterfuge' leaves a plaintiff 'blamelessly ignorant' of the facts and circumstances entitling him or her to relief, [§ 5-203] prevents the limitations clock from running until the plaintiff has learned or should have learned of the fraud").

The fact that plaintiffs seek class certification also does not preclude equitable tolling.  Certainly, the Fourth Circuit routinely denies equitable tolling in pre-certification class actions where determination of most claims would turn on facts peculiar to the individual claims.  See, e.g., Thorn v. Jefferson-Pilot Ins. Co., 445 F.3d 311, 323-24 (4th Cir. 2006) (finding that equitable tolling could not be resolved on a

---

plaintiffs to discovery back to December 1995.  (Paper No. 136, 3 (citing Master Fin., Inc. v. Crowder, 409 Md. 51, 972 A.2d 864 (2009))).  The Court of Appeals of Maryland recently articulated that the specialty statute should apply where "(1) the duties, obligations, prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by [statute], (2) the remedy pursued . . . is authorized solely by [statute], and (3) the ascertainment of those amounts is readily ascertainable."  Id. at 72, 972 A.2d at 876.  The Maryland Finder's Fee Act meets these requirements: application of this extended statute of limitations is not precluded by plaintiffs' pursuit of additional claims, Crowder, 972 A.2d at 868, 872, a statutory remedy that is heightened from that available at common law is sufficiently statutory to justify application of the specialty statute, id., 409 Md. at 72, 972 A.2d at 876, and damages under the Finder's Fee Act are certainly readily ascertainable, with the alternative liquidated, fixed remedy of $500 per transaction, Id.

class-wide basis where applicability of equitable tolling would depend on an examination of "the particular circumstances of each individual class member"); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (declining to certify a class that included plaintiffs whose claims were time-barred as well as claims that were not time-barred); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998) (finding that "difference[s] in right" precluded class certification where claims depended on individual showings that were "non-typical and unique to each franchisee"); Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 597-98 (4th Cir. 1976) (denying class certification where a determination of whether the statute was equitably tolled "would turn on facts peculiar" to plaintiffs' individual claims).  However, equitable tolling is not always inappropriate in the context of a class action. Lukenas, 538 F.2d at 597 (highlighting the "considerable difference in rights, so far as tolling the statute is concerned between a lot purchaser who relies on the bare failure to file a Statement of Record . . . and one who plants his rights on a false or fraudulent statement in the "Property Report" furnished him under the Act," and commenting that in the latter case, equitable tolling may be easier to establish on a class-wide basis).  In fact, application of equitable tolling is particularly appropriate at this stage in class action

litigation to allow the Court to determine the scope of the class. Proctor v. Metro. Money Store Corp., Civ. No. 07-1957, 2009 WL 2516361, *14 (D. Md. Aug. 13, 2009) (applying equitable tolling to a RESPA class action case and commenting that application of equitable tolling at this early stage was particularly appropriate).

Minter and Petry plaintiffs adequately pled equitable tolling in their complaints. Certainly, "merely intoning the word 'fraudulently' in a complaint is not sufficient" to raise the defense of equitable tolling. Weinberger v. Retail Credit Co., 498 F.2d 552, 555 (4th Cir. 1974). Rather, "a plaintiff seeking to escape the statute in such a case shall make 'distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made." Id. (quoting Stearns v. Page, 48 U.S. 819, 822 (1849)). See also Supermarket v. Marlinton, Inc. v. Meadow Gold Dairies, 71 F.3d 119, 122 (4th Cir. 1995) (requiring that, to invoke equitable tolling, a plaintiff must demonstrate that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence").

8

A plaintiff may satisfy the due diligence element without demonstrating that it engaged in any specific inquiry into that which was concealed by instead establishing that it was not aware of facts that should have provoked its inquiry. Meadow Gold Dairies, 72 F.3d at 126, 128. Thus, equitable tolling may be adequately pled where a complaint alleges that disbursements were not made in accordance with statements provided to plaintiffs, that documents were not properly recorded, and plaintiffs were reasonably unaware of any departure from what was represented to them. Proctor, 2009 WL 2516361, *15.

Here, plaintiffs' claims, as articulated in their complaints, stem from defendants' use of "a uniform and consistent protocol" and their ongoing conduct in each transaction since Prosperity's inception under which plaintiffs and members of the putative class were uniformly and consistently deceived into paying unlawful fees to Prosperity. (Minter Complaint, Paper No. 18, 7-21; Petry Complaint, Paper No. 1, 8-15).

Therefore, having found that equitable tolling is both available and has been adequately pled, the Court concludes that plaintiffs are entitled to discovery of documents throughout the entire putative class period, dating back to and including Prosperity's 1993 inception.

The parties further contest specific document requests:
Prosperity Request Nos. 5, 8, 9, 15, 17, 23, and 25, and Wells
Fargo Request Nos. 4 and 7.

As to plaintiffs' request for Prosperity's federal and
state tax returns (Prosperity Request No. 5), Prosperity fails
to support its contention that tax returns are confidential
documents that require a compelling reason for production.  (See
Paper No. 108-3, 19).  It is well-settled that corporate tax
returns are not privileged by statute or at common law, e.g., 26
U.S.C. § 6103 note (noting that the 26 U.S.C. § 6103 privilege
is limited to prohibition of disclosures by government officers
and does not prevent a court from requiring a taxpayer to
disclose tax returns in discovery); MD. CODE ANN., TAX-GEN. § 13-
202 note (commenting that "Federal and State tax returns are not
privileged, and, provided they are relevant, they are
discoverable"); MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 5:5
(recognizing that tax returns are not privileged, but that
courts should order discovery of them only under a protective
order where clearly relevant), and the protective order already
in place in this case is adequate to protect any confidential
information produced.  Plaintiffs have articulated that
schedules contained in Prosperity's tax returns include
information relevant to the HUD elements, which are central to
this case, and are thus discoverable.  Therefore, plaintiffs are

entitled to all federal and state tax returns filed by
Prosperity and not limited to Maryland, contingent on the
parties' agreement as to nonproduction of any clearly irrelevant
schedules and subject to the existing protective order.

As to plaintiffs' request for documents regarding
Prosperity's warehouse lines of credit (Prosperity Request No.
9), Prosperity has already provided the Master Agreement
establishing its warehouse lines of credit, but plaintiffs
requested documents showing when those lines of credit were used
and agreed to limit their requests to only documentation
relevant to the 200 sample loan files.  Plaintiffs allege that
this documentation will show to what extent defendants' actions
varied from the practices established in the Master Agreement,
and will show when and where transfers were made.  Therefore, as
this information appears reasonably calculated to lead to the
discovery of relevant information, plaintiffs are entitled to
discovery from Prosperity of the documents requested pertaining
to the warehouse lines of credit as requested for the 200 sample
loan files.

As to plaintiffs' requests for memos prepared by or for
Prosperity by or for Long & Foster, Wells Fargo, and/or Walker
Jackson and for documents containing analyses of Prosperity's
financial performance (Prosperity Request Nos. 23 & 25), the
parties have agreed to confer in an attempt to resolve the scope

11

of these requests.  Plaintiffs are therefore entitled to discovery of the documents requested under Request Nos. 23 and 25 subject to the parties' agreement as to the reasonable scope of those requests.

Plaintiffs request all documents submitted to or received from any state or federal agency, including annual reports and documents concerning any state or federal licensure (Prosperity Request Nos. 8, 15, & 17; Wells Fargo Request Nos. 4 & 7). Plaintiffs suggest that these documents are likely to establish or infer that Wells Fargo exercised control over Prosperity and its regulatory filings during the relevant period.  However, defendants openly admit that Wells Fargo handled regulatory matters for Prosperity and have provided in discovery a copy of an agreement that establishes this fact.  Therefore, as the documents requested are not reasonably calculated to lead to the discovery of relevant evidence and, at best, would result in cumulative or duplicative evidence, plaintiffs are not entitled to filings made by Prosperity or Wells Fargo with state or regulatory agencies to the extent those documents are not otherwise produced.

B.   **Motion to Compel Production of Loan Files**

Originally, plaintiffs sought production of all loan files (Paper No. 111-2, Ex. A, Document Request 1).  After extended negotiation, parties agreed to a random sample of 200 loan files

covering the entire period of 1993 to the present.  (Id., 8 &
Ex. H).  Prosperity then produced a sample of 100 loan files
covering the period of 2003 to the present.  (Paper No. 148, 1-
2).  On the basis of the Court's finding that the relevant
discovery period extends back to 1993, defendants shall now
provide to plaintiffs an additional 100 loan files covering the
period of 1993 through 2003 in accordance with the parties'
agreed-upon random sampling methods and agreed-upon content.

Although defendants Prosperity and Wells Fargo do not
dispute that the loan sample is representative of all loan
files,[5] defendants argue that they should not be limited to
reliance on the loan sample during the class certification
period, and should instead be able to use all loan files,
including those not provided to plaintiffs in discovery, in
defending this stage of the litigation.  This position is
fundamentally unfair, especially in light of defendants' denial
of complete access to all loan files to plaintiffs.  Given the
random nature of the loan file sample selection and its
representative character, plaintiffs and defendants should be
equally capable of supporting their positions on the basis of
that sample.  Limitation of precertification discovery of loan
files to a limited sample is an excellent, mutually beneficial

---

[5] At the December 1, 2009 motions hearing, counsel for defendants Prosperity
and Wells Fargo expressly declined to dispute that the sample of 200 loan
files was representative.

cost-saving approach.  <u>See</u> Manual for Complex Litigation, Fourth § 21.14 (approving of sampling in the context of class-related discovery to the extent it "provides a meaningful, or at least objective, sample of data").  Therefore, plaintiffs and defendants shall be equally limited to only the loan file sample for purposes of class certification.

<u>**CONCLUSION**</u>

As set forth in the Court's December 2, 2009 Order, the Court GRANTS in part and DENIES in part Plaintiffs' Discovery Motion #1: To Compel Production of Documents from Defendant Prosperity Mortgage (Paper No. 108), DENIES Plaintiffs' Discovery Motion #4: To Compel Production of Documents from Defendants Wells Fargo Bank, N.A. and Wells Fargo Ventures, LLC (Paper No. 139), and GRANTS Plaintiffs' Discovery Motion #2: To Compel Production of Loan Files and for a Protective Order (Paper No. 111).


Date:  12/16/09                    __ ____/s/_____
                                   Susan K. Gauvey
                                   United States Magistrate Judge