# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

August 13, 2010

Cyril V. Smith, III, Esq.
William K. Meyer, Esq.
Zuckerman Spaeder, LLP
100 E. Pratt Street, Suite 2440
Baltimore, MD 21202

Richard S. Gordon, Esq.
Benjamin H. Carney, Esq.
Cory L. Zajdel, Esq.
Quinn, Gordon & Wolf
102 W. Pennsylvania Avenue, Suite 402
Towson, MD 21204

Brian M. Forbes, Esq.
Brian W. Stolarz, Esq.
Irene C. Freidel, Esq.
David T. Case, Esq.
K and L Gates LLP
1601 K Street, N.W.
Washington, DC 20006

Jay N. Varon, Esq.
Wendy K. Arends, Esq.
Foley & Lardner, LLP
3000 K Street, N.W., Suite 500
Washington, DC 20007

Soyong Cho, Esq.
Thomas M. Hefferon, Esq.
David L. Permut, Esq.
Goodwin Proctor LLP
901 New York Avenue, N.W.
Washington, DC 20001

Re:   Denise Minter v. Wells Fargo Bank, N.A., et al.
      Civil No. WMN-07-3442
      Bradley D. Petry, et al. v. Prosperity Mortgage Co., et
      al., Civil No. WMN-08-1642

Dear Counsel:

Before the Court is defendants' letter motion regarding the
adequacy of plaintiffs' responses to Prosperity Mortgage's and
Wells Fargo's discovery requests:  plaintiffs' failure to produce
solicitation letters sent to named plaintiffs by counsel and to
answer certain interrogatories.  (Paper No. 220).  Briefing is
complete; no hearing is necessary. For the reasons set forth
below, the Court denies the motion to compel.

Solicitation Letters

Defendants seek in Prosperity Request No. 21 and Wells Fargo
Request No. 26  "[a]ll communications and correspondence between
You and any attorney of record in this case prior to the
establishment of an attorney-client relationship, including but
not limited to any solicitation letters sent to you." (Paper No.
220, 8).  Plaintiffs objected on the grounds of privilege and
irrelevance.  (Id.).

In their submissions to the Court, defendants argue that the
information is neither privileged nor irrelevant.  Defendants
declare that "[s]olicitation letters are clearly relevant to
class certification issues, including the adequacy of the
putative class representative and counsel, and witness

2

credibility." (Paper No. 220, 8); Paper No. 222, 7-8).
Defendants add that "[t]his is especially the case because of
'traditional' concerns about 'stirring up' litigation remain
relevant in the class action context." (Paper No. 220, 8).
Plaintiffs counter that there is no factual basis for any
improper solicitation and no satisfactory explanation as to how
the sought-for solicitation letters bear on the issues of
adequacy. (Paper No. 221, 11-12).

The Court agrees with plaintiffs. The letters are not
relevant for class certification purposes.

## Privilege

Plaintiffs first object to production of these solicitation
letters on the basis that they are protected by the attorney
client privilege. <u>See</u> (Paper No. 221, 7). Defendants' counsel
point out that plaintiffs' counsel have abandoned the attorney
client privilege argument. (<u>Id.</u>) Defendants are correct: no
privilege attaches to these letters.

The attorney-client privilege exists only after an
individual communicates information in confidence for legal
advice to a person the individual believes is a qualified
attorney and the attorney is representing the individual. PAUL
R. RICE, 1 ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 2:4 (2d ed.
2009). <u>See</u> also <u>United States v. Lentz</u>, 524 F.3d 501, 523 (4th
Cir. 2008) (defining the elements of privilege). Unsolicited

information sent by an attorney to a prospective client is not privileged because the prospective client has no subjective expectation of a privileged relationship.  See 1 RICE § 2:4; In re Grand Jury Subpoena Under Seal, 415 F.3d 333, 339 (4th Cir. 2005) (requiring the potential client's reasonable expectation of privilege as a necessary, but not alone sufficient, element to establish privilege).

In this case, the solicitation letters are not privileged because an attorney-client relationship had not yet been established.  The communication could not be construed to be in confidence, as the confidential status of a communication must stem from the client's communication of information.  See 1 RICE § 6:1.  The letters further could not contain protected "legal advice" as the prospective class members had not sought legal assistance.  Id. § 7:32.  While plaintiffs' counsel are, evidently, licensed and qualified attorneys in various jurisdictions, they were not representing putative class members at the time the solicitation letters were sent out and therefore no attorney-client privilege can attach.  Id. § 2:4.

Even if a client reasonably expected that communication to be privileged, this element is necessary but not alone sufficient to establish privilege.  Grand Jury Subpoena, 415 F.3d at 339 (articulating the elements of the attorney-client privilege).  Thus, as not all of the elements necessary to establish privilege

4

are satisfied, the letters are not privileged.  Plaintiffs wisely
abandoned the argument; it is without support.

Relevance

Defendants seek the solicitation letters as relevant to
"class certification issues, including adequacy of the putative
class representatives and counsel and witness credibility.
(Paper No. 220, 8; Paper No. 222, 8).  Relevant information is
that information which "appears reasonably calculated to lead to
the discovery of admissible evidence."  FED. R. CIV. P. 26(b)(1)-
(2).  The standard for what is "relevant" is quite broad, even in
light of recent amendments to the Federal Rules of Civil
Procedure.  The information itself need not be admissible at
trial.  See WLR Foods, Inc. v. Tyson Foods, Inc., 65 F.3d 1172,
1184 (4th Cir. 1995).  In the context of a class action during
precertification discovery, the information must speak to the
requirements of Rule 23 (numerosity, commonality, typicality, and
adequacy).  As discussed below, court-ordered discovery of
solicitation efforts must be based on more than curiosity about
the nature of the solicitation or mere speculation that the
solicitation might bear on the class certification factors.

In its submissions, defendants focus on the relevance of the
requested discovery to the adequacy requirement.  There is no
plausible relationship of the solicitation letters to other class

5

certification requirements and defendants do not so argue.[1]

---

[1] As to the numerosity requirement, FED. R. CIV. P. 23(a)(1), there is no indication in this case the solicitation letters would lead to information regarding the size of the putative class. While a request asking for the number of letters sent out might be relevant to show that the number of plaintiffs is too numerous to make joinder impracticable, this request has not been made in the instant case. See (Paper No. 220, Ex. C) (requesting all pre-representation communication for one named plaintiff). Thus, the solicitation letters are not relevant in determining numerosity.

The letters also do not speak to the commonality of the class as a whole. Commonality requires that the class have a common set of factual or legal issues so as to make the class action the most efficient use of judicial resources. FED. R. CIV. P. 23(a)(2). This requirement is not a straightjacket, as the parties need not have literally identical facts or legal theories. See CHARLES WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, 7A FEDERAL PRACTICE & PROCEDURE CIVIL § 1763 (3d ed. 2010) (noting that Rule 23(a)(2) does not require that all the questions of law and fact raised in the dispute be common). See also, Stott v. Haworth, 916 F.2d 134, 145 (4th Cir. 1990) (holding that commonality is proper only when a "determinable critical issue overshadows all other issues").

In this case, it is unclear how solicitation letters sent by counsel to putative plaintiffs could somehow differentiate the legal and factual issues that would be litigated in the class. At the very most, the letters could be materially different, highlight different facts, somehow influence only a particularly desirable segment of the class to participate, or solicit participation in a different communications medium. Nothing of the sort has been argued here. See (Paper Nos. 220 & 222 (failing to argue any commonality relevancy)). Even if these arguments were made, this information would still not be relevant because even at its most damning, this information probably cannot pry apart the core set of legal and factual issues laid out by plaintiffs that each plaintiff was allegedly cheated out of money when it procured a mortgage from Prosperity. See (Paper No. 156, 2 (defining the core set of legal issues)). Whether and how plaintiffs became involved in the action in no way speaks to the allegations in the complaint, which occurred long before these suits were filed. See (Paper No. 1, 15 (noting that defendants' alleged bad conduct occurred in 2005)). Thus, the solicitation letters cannot be relevant for determining commonality.

Finally, the solicitation letters are not relevant for determining whether the named representatives are typical of the class as a whole. FED. R. CIV. P. 23(a)(3). See also Gen. Tel. Co. of Sw. Fl. v. Falcon, 457 U.S. 147, 156 (1982) (quoting E. Tx. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members") (internal quotations and citation omitted)); Sprague v. Gen. Motors Corp., 133 F.3d 388 (6th Cir. 1998), cert. denied, 524 U.S. 923 (1998) ("The premise of

6

As pointed out by both parties, (Paper Nos. 220, 221, & 222), the real issue here is whether the letters speak to the adequacy of named plaintiffs' ability to represent the interests of the class, including the fitness and experience of counsel to prosecute the class action. FED. R. CIV. P. 23(a)(4). The Fourth Circuit has not directly ruled on the relevancy of solicitation letters in determining adequacy, of class representation. However, other courts, including those on which defendants rely, that have examined the issue had before them more than mere speculation that the letters might contain relevant information before compelling discovery.

For their discovery request, defendants rely on four cases - none controlling on this court and none factually apposite. First, only Pilcher v. Direct Equity Lending, Civ. No. 99-1245, 2000 WL 33170865 (D. Kan. Dec. 22, 2000), dealt with the relevancy of discovery of plaintiffs' counsel's solicitation of prospective class members under FED. R. CIV. P. 26.  Notably in Pilcher, discovery had already revealed that solicitation of at least one plaintiff was through a false advertisement of the availability of second mortgages from a non-existent bank and

---

the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."); Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) (quoting Sprague, 155 F.3d at 340).  While not argued by Prosperity, the letters are not relevant for typicality purposes because, again, how plaintiffs eventually became involved in the suit does not speak to their injuries or interests in the outcome of the suit.

that solicitation of other plaintiffs was under the guise of a hastily incorporated "non profit." Id. at *1-2.  This discovery, of course, raised serious questions about the fitness of counsel - a pertinent inquiry under FED. R. CIV. P. 23(a)(4), Id. at *3; but not a reasonable inquiry here, in the absence of any evidence of counsel misconduct or unfitness.

Second, the issue before the Court in EEOC v. CRST Van Expedited, Inc., Civ. No. 07-0095, 2009 WL 136025 (N.D. Iowa Jan. 20, 2009), was whether solicitation contacts were protected work product.  Id. at *4.  While the Court did state in dictum that representations to prospective class members to induce their participation were relevant to their credibility, it did so only in the context of its examination of the applicability of the work product doctrine.  Id.  Moreover, it did so after having earlier found that defense counsel was forbidden to inquire of at least one of the class representatives about solicitation efforts in their deposition, id., not the case here.  Prosperity has deposed the named plaintiffs.  While their stories vary in detail, the named plaintiffs all indicate what everyone in this case already knows: the named plaintiffs were solicited by mail to participate in the suit.[2]

---

[2] During deposition, both Mr. and Mrs. Petry stated she could not remember who sent them a solicitation letter.  (Stacey Petry Depo. Apr. 29, 2010, 42-43; Bradley Petry Depo. Apr. 29, 2010, 121).  Ms. Alborough stated that Messrs. Carney and Gordon sent her a solicitation letter.  (Rachel Alboroguh Depo. May 12, 2010, 135).  Ms.

Third, <u>Auscape International v. National Geographic Society</u>, Civ. No. 92-6441, 2002 WL 31250727 (S.D.N.Y. Oct. 8, 2002), involved whether solicitation letters were protected by the attorney-client privilege.  As discussed above, plaintiffs have conceded this point.

Finally, <u>Melzer v. CNET Networks, Inc.</u>, 934 A.2d 912 (Del. Ch. 2007), examined the relevancy of a solicitation letter within the specific and peculiar context of Delaware law - DEL. CODE ANN. tit. 8, § 220 (West 2010).  Under that statute, plaintiffs must show that they have a proper purpose for bringing a books and records inspection suit and that this purpose is reasonably related to their status as shareholders.  <u>Melzer</u>, 934 A.2d at 916-17.  There is, of course, no such burden to prove a particular motive in instigating a lawsuit of the kind before this Court.  Accordingly, the Delaware Chancery Court's decision compelling production of solcitation letters is wholly unhelpful in this case.

In this case, there is no evidence that plaintiffs' counsel used improper means in soliciting plaintiffs, as there was in

---

Minter initially stated she was contacted via telephone, but later corrected her testimony on redirect and stated she had been initially contacted via a letter from plaintiffs' counsel's firm.  (Denise Minter Depo. May 11, 2010 194-95; 248 (Q: Is it possible that you were first contacted by my law firm through a letter?  A: That is true.)).  The statements of both the named plaintiffs and counsel indicate that the events leading up to representation are hazy at best.  However, discovery demonstrated that they were all solicited using a legitimate mass mailer and discovery failed to uncover any evidence suggesting their lack of fitness as class representatives.

Pilcher.  Pilcher, 2000 WL 33170865 *1.  Indeed, solicitation of prospective class members is a recognized and approved practice in America especially following Zauderer.  Zauderer v. Offc. of Disciplinary Counsel of Supreme Ct. of Oh., 471 U.S. 626, 647 (1985) (holding that, under the Constitution, "[a]n attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal right of potential clients").

Finally, defendants allege that based on Ms. Minter's responses in her deposition, she may not be willing to act as a class representative.  See (Paper No. 222, 8).  While that may be true, it is unclear how the solicitation letters would shed light on that allegation.  Similarly, defendants argue that there is an inconsistency between some of the allegations of the first amended complaint and deposition testimony, raising a question about plaintiffs' credibility and ability to represent the class.  (Id.).  Defendants cite no case or logical connection to support their position that a solicitation letter would speak to the willingness of the putative class representative to represent the class or bear on her or his credibility.  It is, to use the vernacular, a stretch.

Rather, plaintiffs' argument is more convincing.  The leading treatise on class actions, cited by plaintiffs as well as defendants, advises that "[u]nless a defendant has information

that, if true, would seriously undermine the standing of the
plaintiff to bring the action, or otherwise would create a
conflict of interest, the defendant ordinarily should not be
permitted to engage in a broad fishing expedition, in pretrial
discovery, to seek to turn up such facts." (Paper No. 221, 12
(citing WILLIAM B. RUBENSTEIN, ALBA CONTE, & HERBERT B. NEWBERG, 3 NEWBERG
ON CLASS ACTIONS § 7:8 (4th ed. 2010))).

What defendants have is a theoretical argument that
plaintiffs' counsel <u>may</u> have said <u>something</u> to the
<u>representatives</u> that would be useful to defense counsel in
casting doubt on their credibility as witnesses.  It makes no
sense; it is too weak a read.

Defendants have also suggested that plaintiffs' counsel may
have said something inconsistent with ethical practice, which
would affect the adequacy of counsel.  To bolster their
entitlement, defendants quote <u>Gulf Oil Company v. Bernard</u>, 452
U.S. 89, 101 n.11 (1981), that "traditional concerns about
'stirring up' litigation remain relevant in the class action
context." (Paper No. 222, 8).  Again, defendants' suggestion is
theoretical and arguably offensive in the absence of any hint of
impropriety and in light of the current view of solicitation as
legitimate and indeed in some cases a public service.  <u>Zauderer</u>,
471 U.S. at 646-47.

The solicitation letters are not discoverable because

11

"fishing expeditions" are prohibited under the rules and harass named plaintiffs for "standing up for their rights."  See (Paper No. 221, 12); 3 NEWBERG § 7:8.  This is a "fishing expedition" because defendants cannot cite a single fact in their submissions to suggest that the letters will speak to the adequacy of the representatives, including adequacy of counsel, or that the letters are probative of the credibility of the named representatives on the adequacy requirement, in support of their relevancy argument.

Moreover, as Newberg has stated: "far-flung discovery on the adequacy of representation" usually results in obtaining information of "highly questionable relevance" that distracts the parties and the Court from consideration of the merits.  5 NEWBERG § 15:30.  Indeed, without an indication of what kind of evidence or additional discovery would be had from such a request, the letters could turn up nothing and end up harassing the plaintiffs (and counsel) for attempting to prosecute their rights.  Id.; 3 NEWBERG § 7:8.

Finally, one might say, as defendants suggest, "no harm, no foul," that is, the burden of production is slight, so it should be ordered.  Indeed, the "burden" of production of three letters would be slight.  But the deleterious effect of the ordered production is not measured by the amount of time it would take plaintiffs' counsel to photocopy the three letters sent to the

12

named class representatives.   Rather, the negative effect or the burden is on the class litigation itself, as Newberg has so aptly stated:  it distracts from the merits of the case.  Accordingly, in the absence of some real - not theoretical basis - the Court does not find that the solicitation letters are "reasonably calculated to lead to the discovery of admissible evidence."

### Disputed Interrogatories

Defendants move to compel answers to Prosperity's interrogatory nos. 8, 10 and 16 and to Wells Fargo's interrogatory nos. 5 and 7, which they assert "seek the factual support for central allegations in the Complaint."  (Paper No. 220, 3).  In their answers, plaintiffs declined to answer giving with a laundry list of grounds:  overbreadth, vagueness, work product doctrine, their nature as "contention" interrogatories and the prematurity of the request.  The Court agrees with defendants that the claim of overbreadth, vagueness and work product doctrine are unavailing.  The Court must view the interrogatories under "a rule of reason."  While they do ask for "all facts," the Court would read that as all "material" facts, see Lucero v. Valdez, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Interrogatories may ask for the material or principal facts that support a party's contentions..."), and as not asking for "every conceivable detail," Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc., Civ. No. 05-2164, 2007 WL 2192860, *2

(D. Kan. July 25, 2007).  These are key contentions about which defendants are entitled to a complete understanding of the factual basis.  All these interrogatories are proper.  With the exception of Interrogatory Nos. 10 and 16 and possibly 7, they essentially ask for more factual detail -- a more complete description of the facts as alleged.

There is nothing improper with either the factual or contention type of interrogatory.  The only question is whether these interrogatories which probe, as they do, the key facts and legal contentions of the complaint are appropriate at the pre-certification stage of this case.  For the reasons set out below, the Court has concluded that they are premature; this discovery is neither tailored to the four requirements of class certification nor necessary for resolution of class certification.  Moreover, answers to contention interrogatories are usually delayed until later in the merits discovery phase.

Interrogatory Nos. 10 and 16 could be viewed as asking for the facts supporting plaintiffs' legal contentions, i.e., that the $1290.00 was a "Finder's Fee" and that Prosperity was a "broker" and a "lender."  Interrogatory No. 7 is a closer question.  While "table-funded" is a legally defined term, it also is factual.  At this point, all will be treated as "contention" interrogatories.  Defendants are absolutely entitled to an answer, but not now.  See FED. R. CIV. P. 33(a)(2) ("[T]he

14

court may order that the interrogatory need not be answered until
. . . some other time."). That is both because they are
"contention" interrogatories and because they are broad,
unjustified, inquiries into the merits of the case in the pre-
certification stage.

The Court agrees that, in deciding class certification, it
cannot simply look to and accept all of the complaint's
allegations. Gariety v. Grant-Thornton, LLP, 368 F.3d 356, 365-
66 (4th Cir. 2004). However, that does not mean that broad
discovery on the merits is necessary to allow the parties to
argue and the Court to decide whether the requirements of Rule 23
have been met. There has been significant discovery here and, of
course, defendants are well aware of their own practices and
procedures. Accordingly, it is difficult to see how this
discovery is necessary now. Defendants have failed to
demonstrate the critical nature of these interrogatories to the
class certification inquiry.

It is well recognized that precertification discovery
entails a certain amount of overlap between the certification
requirements and the merits of the case. See Gen. Tel. Co. of SW
v. Falcon, 457 U.S. 147, 160 (1982) (noting that the court may be
required to "probe behind the pleadings" to answer certification
questions). That does not, however, give a green light to full
blown merits discovery.

Rule 23(a) has four attributes of a proper class: numerosity, commonality, typicality, and adequacy of the representative parties. FED. R. CIV. P. 23(a)(1)-(4). The disputed interrogatories are not tailored to elicit relevant information on these criteria.

First, a putative class must be so numerous as to make joinder impractical. FED. R. CIV. P. 23(a)(1). These interrogatories do not ask for information about class size, but rather are directed to the named plaintiffs in this action. See (Paper No. 220, 3). The interrogatories do not question how big the class is or what facts are used to support such a contention, such as identifying the sample size and representative cases will be used to prove numerosity. See, e.g., Bulmash v. Travelers Indemnity Co., 257 F.R.D. 84, 87-88 (D. Md. 2009) (holding that the numerosity requirement was satisfied after examining a sample of representative insurance files to determine putative class size). Thus, these interrogatories are not relevant for the numerosity requirement.

Similarly, these interrogatories are not tailored to the commonality typicality, or adequacy requirements, but go far beyond those inquiries and strike directly at the heart of the merits. It is often stated that the class action requirements of commonality, typicality, and adequacy "merge" together. See Gariety, 368 F.3d at 362 (recognizing that Rule 23(a)'s final

16

three requirements tend to effectively merge together); Brousard,

155 F.2d at 337 (same); Falcon, 457 U.S. at 157, n.13 (same).

"Commonality requires that 'there are questions of law or

fact common to the class.'" Lienhart v. Dryvit Sys., Inc., 255

F.3d 138, 146 (4th Cir. 2001) (quoting FED. R. CIV. P. 23(a)(2)).

Class commonality must be such that a class action is the

appropriate vehicle in terms of judicial efficiency, convenience,

and "uniformity of decision." 1 NEWBERG § 3:1. See also,

Bulmash, 257 F.R.D. at 88 (quoting Falcon, 457 U.S. at 157 n.13

(noting that commonality serves as a "guidepost" in determining

whether an action is economical)).[3] An inquiry into typicality

---

[3] In Miller v. Baltimore Gas & Electric Company, 202 F.R.D. 195 (D. Md.
2001), Judge Blake helpfully identified past questions that the Fourth
Circuit has found acceptable in determining the commonality question
with respect to a Title VII class action. As was the case in Miller,
Title VII is not at issue in this case, but "the list of questions is
a useful guide" as to what questions the court might ask itself during
class certification, and by implication, what questions the parties,
via interrogatories, should be asking of each other. Id. at 202 n.8
(quoting Statsny v. S. Bell Tel. and Telegraph Co., 628 F.2d 267, 277
(4th Cir. 1980):
    (i) What is the nature of the unlawful employment practice
    charged-is it one that peculiarly affects only one or a few
    employees or is it genuinely one having a class-wide impact.
    (ii) How uniform or diverse are the relevant employment
    practices of the employer, considering matters such as: size
    of the work force; number of plants and installations
    involved; extent of diversity of employment conditions,
    occupations and work activities; degree of geographic
    dispersion of the employees and of intra-company employee
    transfers and interchanges; degree of decentralization of
    administration and supervision as opposed to the degree of
    local autonomy.
    (iii) How uniform or diverse is the membership of the class,
    in terms of the likelihood that the members' treatment will
    involve common questions.
    (iv) What is the nature of the employer's management
    organization as it relates to the degree of centralization

17

deals with "the class representative's 'interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." Bulmash, 357 F.R.D. at 88 (quoting Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006)). The inquiry into adequacy involves a comparison between the putative class and its representatives to ensure that there are no conflicts of interest between the class representatives and the class as a whole. See, e.g., Falcon, 457 U.S. at 157 n.13 (recognizing that the adequacy requirement "raises concerns about the competency of class counsel and conflicts of interest").

These interrogatories are too sweeping, at this stage. Defendants ask for every fact associated with specific assertions that plaintiffs make in their complaint, which they will have to prove at trial in order to succeed on the merits. A more narrowly tailored interrogatory would be appropriate at this point. See supra n.4 (providing examples of proper contention interrogatories during pre-certification discovery). But asking plaintiffs to give "all facts" to support a central contention of the merits of this case at this stage of the litigation goes far beyond what is necessary to decide the instant question. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974)

---

and uniformity of relevant employment and personnel policies and practices.
(v) What is the length of the time span covered by the allegations, as it relates to the degree of probability that similar conditions prevailed throughout the period.

18

(holding that merits discovery is inappropriate during the precertification stages of class action).  While defendants assert in a conclusory fashion that the interrogatories are "relevant to the elements of commonality, typically and predominance."  (Paper No. 222, 5).  They "tell," but don't show.

The Court agrees with plaintiffs that there has been sufficient explication of the plaintiffs' claims to allow defendants to oppose class certification and the Court to rule on class certification.  Tellingly, defendants have not identified specific areas of imperative inquiry related to the class certification criteria.  They have simply asked for great factual detail, perhaps hoping to find "chinks in the armor" of asserted commonality or typicality among the more fulsome factual description of the complaint.  This is not the "controlled discovery into the 'merits'" which the Advisory Committee on Civil Rules endorsed.  FED. R. CIV. P. 23, Advisory Committee Note, 2003 Amendments.  For these reasons, the Court denies the motion to compel.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

Sincerely yours,

/s/

---

Id.

Susan K. Gauvey
United States Magistrate Judge