IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENISE MINTER, ET AL.              *

V.                                 *        CIVIL NO. WMN-07-3442

WELLS FARGO BANK, N.A., ET AL.     *

_____

BRADLEY PETRY, ET AL.              *

V.                                 *        CIVIL NO. WMN-08-1642

PROSPERITY MORTGAGE CO., ET AL.    *


## MEMORANDUM OPINION

Before the Court is Plaintiffs' Motion to Remove the
"Confidential" Designation from Discovery Documents or, In the
Alternative, to Unseal Class Certification Papers in the above
related cases. (ECF No. 182). The matter is fully briefed. At
defendants' request, the Court held a telephonic motions hearing
on December 1, 2010. For the reasons set forth herein, the
Court hereby DENIES plaintiffs' request to remove the
"confidential" designation from all discovery documents produced
by defendants, GRANTS plaintiffs' request to unseal class
certification papers and remove the "confidential" designation
from exhibits attached thereto, and awards attorney's fees and
costs against defendants in the amount of $10,000 for
plaintiffs' expenses in bringing the motion.

1

# I. BACKGROUND

The <u>Minter</u> and <u>Petry</u> cases share similar factual bases, and have the same defendants. <u>Minter</u> plaintiffs allege that Wells Fargo, in conjunction with Long & Foster Real Estate, Inc., created Prosperity Mortgage — a sham Affiliated Business Arrangement ("ABA") — to facilitate collection of unlawful referral fees and kickbacks. (ECF No. 135, 3). According to plaintiffs, Prosperity is not a mortgage company, but rather a "conduit" through which Long & Foster receives kickbacks for referring mortgages from Wells Fargo. (<u>Id.</u>). Unsuspecting borrowers essentially pay the referral fee disguised as legitimate charges, for which they receive no additional goods or services — a practice plaintiffs assert violates state and federal laws. (<u>Id.</u>). <u>Petry</u> plaintiffs allege that defendants acted as both a mortgage broker and a lender and, in doing so, unlawfully collected "finder's fees" for originated loans. (ECF No. 135, 3); MD. CODE ANN., COMM'L LAW § 12-807.

# II. DISCUSSION

Upon the request of the parties, on July 30, 2008 this Court entered an order pursuant to Fed. R. Civ. P. 26(c) and Local Rule 104.13 providing for the protection of confidential discovery material as defined under Fed. R. Civ. P. 26(c)(7). (ECF No. 54). The Stipulated Order Regarding Confidential

2

Materials ("Confidentiality Order") in effect in the instant

matter applies, *inter alia*, to "[a]ll documents produced in the

course of discovery...,"[1] (ECF No. 54, ¶1) excluding

"...information that has been produced, disclosed, or made

available to the public or otherwise available for public

access..." (Id., ¶1(h)).  Pursuant to the Order, "[o]ne who

provides material may designate it as confidential only when

such person in good faith believes it contains sensitive

personal information, trade secrets or other confidential

research, development, or commercial information." (ECF No. 54,

¶1(a)).

The Confidentiality Order also provides that "[a]

designation of confidentiality may be challenged upon motion"

and, in the event of such a dispute, "[t]he burden of proving

the confidentiality of designated information remains with the

party asserting such confidentiality."  (Id. at ¶4); see also

Local Rule 104.13.  In order to prove confidentiality, the party

opposing disclosure must satisfy the "good cause" standard for a

---

[1]  The full scope of the Confidentiality Order includes "[a]ll
documents produced in the course of discovery, initial
disclosures, all answers to interrogatories, all answers to
requests for admission, all responses to requests for production
of documents, all affidavits, briefs and pleadings, and all
deposition and trial testimony and deposition and trial
exhibits..." (ECF No. 54, ¶1).  Accordingly, when this opinion
discusses defendants' duty under the confidentiality order that
duty extends to all materials listed above, not just documents.

protective order under Fed. R. Civ. P. 26(c) with respect to the material at issue.  Thus, the Confidentiality Order essentially allowed defendants to temporarily enjoy the protection of Rule 26(c) by rendering all discovery documents designated in good faith confidential until challenged by plaintiffs, and vice versa.  However, the Confidentiality Order did not postpone the good faith review required for determination of confidentiality in the first instance.

By their underlying motion, plaintiffs assert that defendants violated the Confidentiality Order and Rule 26(c), and move to strip the "confidential" designation from all discovery material produced by defendants in the instant matter. In the alternative, plaintiffs move to unseal Plaintiffs' Memorandum in Support of Motion for Class Certification ("Plaintiffs' Class Certification Memorandum")(ECF Nos. 185, 186) and remove the "confidential" designation from all documents filed as exhibits thereto.  (ECF No. 182, 2).

For the reasons set forth below, the Court finds that defendants violated the Confidentiality Order in failing to exercise good faith in the designation of vast amounts of the produced documents as "confidential."  Notwithstanding, the Court has determined that blanket de-designation of all discovery material produced by defendants is not the appropriate

4

remedy. In light of defendants' failure to comply with their "good faith" duty under the Confidentiality Order to which they stipulated, necessitating plaintiffs' motion, the Court imposes attorney's fees in the amount of $10,000 pursuant to Rule 37(a)(5). See Fed. R. Civ. P. 37(a)(5). While the Court is not ordering defendants to review all discovery and submit a certificate of document-by-document or category-by-category review as the stipulated Confidentiality Order and Local Rules would require, defendants act at their peril in continued unexamined and quite apparent over-designation of documents produced in discovery. If plaintiffs successfully move for de-designation in the future, the Court shall award expenses at plaintiffs' counsel's market rate.

As discussed below, there is a robust presumption that any documents utilized in judicial proceedings are subject to publication. With respect to the subset of confidential documents filed as exhibits to Plaintiffs' Class Certification Memorandum, the Court finds that defendants have failed to satisfy their burden to show "good cause" for protection under Rule 26(c). Thus, the Court orders that the "confidential" designation be removed from Plaintiffs' Exhibits 3, 10-A, 15, 16, 21, 23, 25, 26, 28, 29, 33, 39, 41, 42, 45, 50, and that Plaintiffs' Class Certification Memorandum be unsealed.

## A. Defendant's Burden to Make Designations in "Good Faith" Pursuant to the Confidentiality Order

It is beyond question that defendants had the burden pursuant to the stipulated Confidentiality Order to designate discovery material as confidential only based upon a "good faith" belief that "it contains sensitive personal information, trade secrets or other confidential research, development, or commercial information." See (ECF No. 54, 2). The form stipulated confidentiality order at Appendix D to the Local Rules, upon which the Confidentiality Order in this case is modeled, further illuminates defendants' "good faith" duty, stating that "[a] party shall not routinely designate material as "CONFIDENTIAL," or make such a designation without reasonable inquiry into whether it qualifies for such designation." Local Rules, Appendix D, Stipulated Order ¶ 1(a). Neither this Court nor the Fourth Circuit has explicitly defined the parameters of the initial "good faith" review required pursuant to a stipulated confidentiality order, however, no interpretation of this standard could be seen to give the parties carte blanche to freely stamp documents as "confidential" without purposeful and thorough inquiry. Anything less than a document-by-document or very narrowly drawn category-by-category assessment fails to satisfy the initial good-faith review requirement.

"Umbrella" or "blanket" protective orders have become a
common feature of complex litigation in the federal courts.
Such orders are intended to "expedite production, reduce costs,
and avoid the burden on the court of document-by-document
adjudication." Manual for Complex Litigation § 11.432 (4th ed.
2010). While umbrella orders provide a mechanism for the court
to resolve discovery disputes concerning confidential
designations without the need for document-by-document
adjudication of all production, they do not relieve the parties
of their burden to consider vigilantly the need for protection
of each document. The utility of this approach is eviscerated
when parties liberally over-designate in the first instance,
thereby postponing rather than eliminating the need for close
judicial scrutiny and ultimately "delaying rather than
expediting the litigation." Id.

Plaintiffs assert that defendants indiscriminately
designated more than 52,000 documents produced in discovery as
"confidential" in violation of their "good faith" burden under
the Confidentiality Order. (ECF No. 182, 1-2). Defendants
counter that plaintiffs "mischaracterize the volume of the
production designated as confidential," (ECF No. 192, 7) and
maintain that their designations were based upon a good-faith
belief that the material contained "confidential and highly

sensitive business information and personal information." (ECF No. 192, 6-10). Based upon review of the submissions by the parties on this issue, the Court finds that the defendants violated the Confidentiality Order in failing to perform a good faith review of the documents prior to designation as confidential.

According to the Declaration of Nancy Kotlowski, paralegal for plaintiffs' counsel, defendants had produced 52,127 documents in electronic form and 200 sample loan files in hard copy as of September 14, 2010. (ECF No. 235-1, 2). Plaintiffs assert that defendants improperly designated substantially all of these documents as "confidential" without conducting a reasonable review. For instance, plaintiffs maintain that defendants designated every page of the sample loan files as confidential, including documents that had already been redacted to remove personal borrower information; publicly-recorded documents; and standard, non-confidential loan documents. (ECF No. 182-1, 3-4). In addition, plaintiffs assert that defendants designated nearly all email produced among the ESI as "confidential," including blank pages and messages simply scheduling meetings. (Id. at 4). Defendants did not deny these assertions. Finally, plaintiffs claim that defendants improperly designated as "confidential" every agreement and

amendment relating to the formation and operation of Prosperity

Mortgage Company although many of the documents are nearly

seventeen years old and have been filed with state regulators.

(Id.).

Plaintiffs note that defendants even admit to making

blanket designations in many instances. (ECF No. 235, 4)(citing

ECF No. 192, 7 n.3 ("Defendant Long & Foster acknowledges that

its ESI production, which alone numbered over 167,000 pages, was

designated 'Confidential'"); ECF No. 196, 3("Given the

tremendous speed with which this process was undertaken, and to

protect the Long & Foster Defendants' proprietary, business

confidential documents, Long & Foster designated these documents

as "Confidential.").  In addition, plaintiffs recount detailed

information indicating that each time defendants have reviewed

segments of their original designations, they have ultimately

re-designated a significant portion of these documents as "not

confidential."  (ECF No. 235, 2).  In response to plaintiffs'

June 14, 2010 request that defendants re-designate their

discovery production to conform to the Confidentiality Order

(ECF No. 182-1, Ex. B), defendants agreed to review only the 228

documents identified as plaintiffs' deposition exhibits.  (ECF

No. 182-1, Ex. C).  Of these 228 documents, 176 were originally

designated as "confidential."  (ECF No. 235-1, 2).  Upon review,

defendants re-designated an additional 57 documents as "not confidential." (*Id.* at 3). Of the 119 deposition exhibits that remained designated "confidential," 14 were exhibits to Plaintiffs' Class Certification Memorandum. (*Id.*). As discussed *infra*, defendants reviewed these documents and re-designated 10 of them as "not confidential" in conjunction with their underlying motion in opposition. (Id.); see also (ECF No. 192, 3 n.1). This further suggests that defendants did not in fact conduct the requisite good faith review until explicitly pressed to do so by plaintiffs, rather than prior to making designations in the first instance as required by the Confidentiality Order.

The supporting affidavits of three defense counsel, Sigmund F. Fuchs (ECF No. 197), Melinda F. Levitt (ECF No. 196), and Brian M. Forbes (ECF No. 195), provide the most detailed explanation of defendants' method for making initial confidential designations under the Confidentiality Order. Mr. Fuchs explains that defendants designated certain categories of hard copy and ESI material as "confidential," including: audited financial statements, profit and loss statements, W-2 statements, tax records, insurance policies, operating committee minutes, training manuals, personnel and salary information, strategic business plans, performance and market reports,

internal compliance reports, information related to individual

borrowers, and certain internal communications. (ECF No. 197,

2-3). This is too broad a sweep designating many documents as

confidential that obviously are not. Categories of produced

documents not identified as "confidential" included: the named

plaintiffs' first and second loan files, Prosperity Mortgage's

various state lending licenses, template affiliated business

arrangement disclosures, media articles, and advertisement and

marketing materials. (Id.). Ms. Levitt, counsel for defendant

Long & Foster, in her declaration goes so far as to state that

they simply designated production as "confidential" in order to

"[move] the process along speedily" and "believed that any

questions relating to confidentiality designations could be

addressed later between counsel." (ECF No. 235, 5)(citing

Levitt Decl. ¶4). This method is clearly at odds with the

Confidentiality Order and demonstrates the blatant absence of

good faith review required prior to designating material as

"confidential." In his declaration, Mr. Forbes indicates that

although defendants reviewed documents from a 200 sample loan

file production to redact private information, "the loan files

were nevertheless designated as confidential in the event the

private information was mistakenly left unredacted." (ECF No.

195, 3).  This admission is further indication of defendants'
excessive designations.

The aforementioned affidavits, defendants' motion in
opposition, and defendants' presentation at the December 1, 2010
motions hearing provide no indication that defendants conducted
any document-by-document assessment prior to making confidential
designations.  Nor have defendants described the process they
engaged in to ensure that categories of information identified
as "confidential" were sufficiently narrowly drawn so as to
exclude non-confidential information.  Instead, defendants
essentially admit to making blanket designations, but argue that
this method was reasonable given the volume of material produced
within a short time period.  (ECF No. 192, 26-29).[2]

In addition, the cases defendants cite in an attempt to
justify their blanket confidential designations fail to provide
persuasive authority here.  See (ECF No. 192, 27-28)(citing
Containment Techs. Group, Inc. v. Am. Soc'y of Health Syst.
Pharmacists, 2008 WL 4545310 (S.D. Ind. Oct. 10, 2008); Kic
Suzhou Auto. Prods., Ltd. v. Xiangling, 2009 WL 214506 (S.D.

_____

[2] Although plaintiffs propounded discovery requests in May 2008
(ECF No. 235, 4 n.2), defendants did not produce the vast
majority of the requested documents - all but 8,162
electronically-produced documents and 100 sample loan files -
until after December 2009.  (ECF No. 235-1, 2).

Ind. Jan. 28, 2009)). The crux of the dispute in <u>Containment</u>
<u>Techs Group, Inc.</u> was the proper scope of confidential
designations; the court considered whether the protective order
would include a provision requiring that "entire documents only
be stamped confidential if indeed the entire document is
confidential, and otherwise [that] only those portions or pages
that are confidential be marked as such." 2008 WL 4545310 at
*2. The <u>Containment Techs Group, Inc.</u> Court ultimately
determined that a provision requiring parties to mark specific
portions of documents, rather than entire documents, as
"confidential" was unnecessary given that that "heightened
attention to confidentiality designations is more appropriate at
the time the document is filed with the Court or used in a Court
proceeding (if ever), as opposed to the time such a document is
produced as part of what may often be a massive discovery
response." <u>Id.</u> at *4. Although the court acknowledged the
burden and expense involved in massive discovery production, it
in no way relieved the parties of their duty to conduct a "good
faith" document-by-document review. Indeed, in declining to
impose a stricter standard for "confidential" designations, the
Court emphasized that "even at the production stage, protective
orders typically charge counsel with a duty to exercise good
faith" in identifying material as "confidential" or otherwise

protected." Id. at *4.  Thus, the Containment Techs Group, Inc.
Court relied upon the function of good faith review in balancing
the practical burdens of large-scale discovery production with
the important consequences of confidential designations.

Kic Suzhou Auto. Prods., Ltd. is similarly inapposite;
although the court quotes Containment Techs Group, Inc. in
dicta, the decision is a denial of a proposed protective order
whose terms for filing confidential documents under seal with
the court were not consistent with applicable law.  The Kic
Suzhou Court determined that the proposed order ran afoul of
"the Seventh Circuit's admonition that a protective order must
not give each party carte blanche to decide what portions of the
record shall be kept secret."  2009 WL 214506 at *1 (internal
quotations omitted).  The judge commented that proposed orders
should require that "...before a party files under seal any
material it has designated as "confidential," its counsel will
perform a document-specific, good faith examination of the
materials to be filed under seal to ensure that they meet the
legal and factual criteria for such treatment..."  Id.  Although
Kic Suzhou is distinguishable from the instant matter in that it
pertains to concerns regarding filing of confidential material
under seal, it is noteworthy that the Kic Suzhou Court also
underscored the important function of good faith review.

14

In sum, defendants' factual and legal arguments fail to support their position. Although careful category-by-category review may satisfy the good faith standard in certain instances, defendants have failed to show here that they took steps necessary to ensure that the categories of information they identified were narrowly drawn, and that the procedures they used to designate material ensured that non-confidential material would not be inadvertently included. On the contrary, the papers and hearing indicate that defendants chose to purposefully and liberally over-designate initially, and negotiate regarding confidential designations if and when plaintiffs objected. The Court finds that defendants' over-designation violates the Confidentiality Order, in effect shifting a much greater burden to plaintiffs than the Order anticipates.

Having determined that defendants have failed to satisfy their "good faith" duty under the Confidentiality Order, the Court considers the appropriate remedy. As plaintiffs properly indicate, this Court has broad discretion in resolving discovery problems in cases pending before it. (ECF No. 235, 8-9)(citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 402 (4th Cir. 2003)). Piecemeal review and de-designation by the Court of defendants' discovery production

in this case (even after defendants' review) would undermine the purpose of the umbrella protective order to achieve judicial economy, and is a result plaintiffs prudently do not advocate.[3]

On the other hand, wholesale declassification of more than 52,000 documents is an undue result here given the diminished public right of access to pure discovery material not filed with the court or used in conjunction with any judicial proceeding. See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988)(opining that "...discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court."). The Supreme Court in Seattle Times v. Rhinehart characterized discovery as "unique" in relation to First Amendment freedom-of-expression issues, and reasoned that "judicial limitations on a

---

[3] It has become commonplace in the federal courts for parties at the outset of complex litigation to stipulate to an "umbrella" or "blanket" protective order such as the Confidentiality Order in this case. See In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987) (discussing operation and efficacy of umbrella protective orders)). The parties concur that the Confidentiality Order in this case is just such "a typical protective order intended to facilitate discovery and encourage full disclosure with minimal oversight by the Court." (ECF No. 192, 6)(citing ECF No. 182-1, 9). Such stipulated orders "avoid the expense and delay of a dispute over every item of allegedly confidential information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action.'" 6-26 Moore's Federal Practice – Civil § 26.104[2].

party's ability to disseminate information discovered in advance

of trial implicate the First Amendment rights of the restricted

party to a far lesser extent than would restraints on

dissemination of information in a different context."  467 U.S.

20, 34 (1984).  The Seattle Times Court noted that, "pretrial

depositions and interrogatories are not public components of a

civil trial.  Such proceedings were not open to the public at

common law, and, in general, they are conducted in private as a

matter of modern practice." 467 U.S. at 33 (internal citations

omitted).  Accordingly, this Court has held that where the

public right to information produced in discovery is at issue,

"[a] general First Amendment argument is precluded by the

Supreme Court's opinion in Seattle Times, 467 U.S. 20 (1984)."

Deford v. Schmid Products Co., 120 F.R.D. 648, 654 n.5 (D.Md.,

1987).[4]

---

[4] Although the Court discusses defendants' "good faith" duty
under the Confidentiality Order here, rather than defendants'
"good cause" burden under Rule 26(c), the diminished public
right of access to discovery material illustrated by the cited
cases is relevant to plaintiffs' requested remedy.  In addition,
although plaintiffs argue only that the First Amendment requires
disclosure of the discovery material at issue, it bears note
that even the lower common law standard similarly applies only
to "judicial records."  Nixon v. Warner Communications, Inc.,
435 U.S. 589, 597-602 (1978)("Under common law, there is a
presumption of access accorded to judicial records."); Virginia
Dept. of State Police v. The Washington Post, 386 F.3d 567, 575
(4th Cir. 2004)(citing Stone v. Univ. of Md. Med. Sys. Corp.,

Given that the cases plaintiffs cite are inapposite with regard to the bulk of discovery material at issue, plaintiffs appropriately focus their First Amendment public right of access argument on discovery material filed with the Court in conjunction with Plaintiffs' Class Certification Memorandum. For instance, the Fourth Circuit in Rushford held that the First Amendment public right of access standard, rather than the less rigorous common law standard, applies to documents filed with the trial court as attachments to a summary judgment motion in a civil case. 846 F.2d at 253. The Rushford Court reasoned that "[o]nce the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status as being 'raw fruits of discovery.'" Id. at 252 (citing In re "Agent Orange" Product Liability Litigation, 98 F.R.D. 539, 544-45 (E.D.N.Y. 1983)(internal citations omitted). Following the rule announced in Rushford, the Fourth Circuit in Virginia Dept. of State Police affirmed the district court's order unsealing civil pretrial discovery material that had been filed in conjunction with an opposition to summary judgment motion. 386 F.3d 567, 578-79 (4th Cir. 2004). The Virginia Dept. of State Police Court approvingly noted that the trial court had limited

855 F.2d 178, 180 (4th Cir. 1988)("The common law presumes a right of access to 'judicial records and documents.'").

the order under review "to cover only documents that had been filed, and [] expressly excluded 'discovery material that was not part of the record.'"  Id. at 573 n.1.

The Fourth Circuit in Stone v. University of Maryland Medical System Corp. similarly focused public access to "judicial records," rather than pretrial discovery material never filed with the court.  855 F.2d 178, 179-80 (4th Cir. 1988)(reasoning that "[w]hile the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents."). Likewise, plaintiffs' other authorities deal with judicial filings. For instance, although plaintiffs cite In re The Baltimore Sun Co. for the principle that "[t]he test for whether the First Amendment bars the sealing of court documents is 1) whether the place and process have historically been open to the press and general public, and 2) whether public access plays a significant positive role in the functioning of the particular process in question" (ECF No. 182-1, 13)(citing 886 F.2d 60, 64 (4th Cir. 1989)), they fail to indicate that the Fourth Circuit in that case considered as a preliminary matter whether "search warrant affidavits are judicial records" and, only after finding that they are, applied the aforementioned test.  886 F.2d 60,

19

63-64 (4th Cir. 1989).  Finally, plaintiffs cite the Court's
prior opinion in this case, which is similarly distinguishable
because it applies to documents that, although not accompanying
a dispositive motion, were nevertheless filed with the Court in
support of a motion for a protective order.  See (ECF No. 118);
Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118 (D.Md. 2009).

Given the lack of an established public right of access to
the pretrial discovery material at issue here, the Court
declines to order wholesale declassification.  The Court
considered imposing on defendants the obligation to review all
discovery materials with senior counsel describing the review
and certifying to the Court that a document-by-document good
faith review had been made.  However, given the strong
likelihood that many of these discovery materials shall never be
used in the actual litigation of the dispute, this seemed like
an expensive and unnecessary burden on defendants (even though
that review is what they agreed to undertake).

Initial confidentiality designations have consequences.
Dissemination is restricted; when disseminated to deponents,
witnesses and experts, written acknowledgement of the binding
nature of the confidentiality order must be obtained for some,
verbal for others.  Deposition transcripts are truncated into
confidential and non-confidential sections.  Litigants must

decide whether to challenge or acquiesce in the designation.  In short, over-designation makes litigation more expensive and more complicated without worthwhile purpose.

Moreover, the Court recognizes that there is both a strategic and a financial incentive to over-designate.  For instance, the Confidentiality Order in this case provides that a confidential document must be destroyed or returned to the producing party at the end of the litigation.  (ECF No. 54, ¶5).  Thus, designation shields from public view a company's documents.  And, of course, careful, document-by-document or category-by-category review is much more labor intensive and requires senior counsel review and approval.  However, the parties agreed to this scheme, consistent with the practice of this Court.

In recognition that defendants failed to conduct a "good faith" review required under the Confidentiality Order, thereby undermining the utility of the umbrella protective order and requiring the plaintiffs to file the subject motion, the Court awards reasonable costs, including attorney's fees, against defendants in the amount of $10,000 pursuant to Rule 37(a)(5).  Fed. R. Civ. P. 37; see Manual for Complex Litigation § 11.432 (4th ed. 2004)("[t]he designation of a document as confidential should be viewed as equivalent to a motion for a protective

order and subject to the sanctions of Federal Rule of Civil Procedure 37(a)(5), as provided by Rule 26(c)").  Defendants were given an opportunity to be heard on both the fact and amount of this award during the December 1, 2010 hearing before the Court, and were offered a further opportunity to be heard. They declined.  Based upon plaintiffs' June 14, 2010 correspondence requesting that defendants re-designate their discovery production in compliance with the Confidentiality Order and Rule 26(c) (ECF No. 182-1, Ex. B), the Court finds that plaintiffs have conferred in good faith with defendants in an attempt to resolve the dispute without court action, as required by Rule 37(a)(5)(1) and the Local Rules.

## B. Defendants' Burden to Show "Good Cause" under Rule 26(c)

Having declined to order wholesale declassification of all discovery material produced by defendants, the Court now considers the confidentiality of specific documents filed with the Court.  Plaintiffs move to unseal 34 documents designated as "confidential" by defendants and filed as exhibits to Plaintiffs' Class Certification Memorandum.  (ECF No. 182).  In response, defendants concede that "after further review of plaintiff's exhibits, defendants do not object to the unsealing of a number of exhibits currently on file with the Court," (ECF No. 192, 3), namely Plaintiff's Exhibits 1, 4, 5, 6, 13, 17, 18,

22

19, 20, 22, 24, 27, 32, 35, 38, 40, 51, 65A, 65B, and 65C (ECF
NO. 186).  (Id. at n.1).  Accordingly, only the confidentiality
of Plaintiff's Exhibits 3, 10-A, 15, 16, 21, 23, 25, 26, 28, 29,
33, 39, 41, 42, 45, 50 and related portions of Plaintiffs' Class
Certification Memorandum remain in dispute.  (Id.).

As the party seeking to restrict public access to the 16
documents at issue, defendants bear the burden of proving
confidentiality under the Confidentiality Order, which
incorporates the substantive requirements of Rule 26(c).  Rule
26(c) provides in pertinent part that:

> Upon motion by a party or by the person from whom
> discovery is sought, and for good cause shown,
> the court...may make an order which justice
> requires to protect a party from annoyance,
> embarrassment, oppression, or undue burden or
> expense, including...(7) that a trade secret or
> other confidential research, development, or
> commercial information not be disclosed or be
> disclosed only in a designated way..."

Fed. R. Civ. P. 26(c).  In order to demonstrate that the
material at issue is properly designated as "confidential,"
defendants must satisfy the Rule 26(c) "good cause" standard.
See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d
1304 (11th Cir. 2001)(opining that an umbrella protective order
merely "postpones the necessary showing of "good cause" required
for entry of a protective order until the confidential
designation is challenged").

23

Although Rule 26 itself does not define "good cause," this Court has determined that "[t]he burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause identifiable harm." Deford v. Schmid Products Co., 120 F.R.D. 648, 652-53 (D.Md. 1987)(citing Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986); Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 891 (E.D.Pa. 1981)). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the R. 26(c) test. Cipollone, 785 F.2d at 1121; see also 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus Federal Practice & Procedure § 2035 (3d ed. 2010)(explaining that the Rule 26 requirement that good cause be shown justifying a protective order "...puts the burden on the party seeking relief to show some plainly adequate reason therefore.").

Defendants maintain that the documents at issue include, inter alia, "Prosperity Mortgage's tax returns, financial statements, its cost structures, payment information and price structures, and certain core information and operations documents." (ECF No. 192, 10). According to defendants, these documents "contain non-public, confidential, and highly

24

sensitive commercial information, including trade secrets, the
release of which will result in unfair disadvantage to
defendants." (Id.).

Defendants cite Zenith Radio Corp., 529 F.Supp. at 890, for
the principle that "[c]ompetitive disadvantage is a type of harm
cognizable under Rule 26." (ECF No. 192, 17). The Zenith Court
also emphasized, however, that "in order to establish good
cause, it must be shown that disclosure will work a clearly
defined and serious injury" and cautioned that "the specific
instances where disclosure will inflict a competitive
disadvantage should be set forth in more than the briefs or the
hearsay allegations of counsel's affidavit, for a protective
order should not issue on that basis alone." 529 F.Supp. at
891. Indeed, with respect to the claim of confidential business
information, courts have found that the "good cause" standard
demands that the company prove that disclosure will result in a
"clearly defined and very serious injury to its business."
United States v. IBM Corp., 67 F.R.D. 40, 46 (S.D.N.Y.1975); see
also Essex Wire Corp. v. Eastern Electric Sales Co., 48 F.R.D.
308, 310 (E.D.Pa.1969) ("great competitive disadvantage and
irreparable harm" must be demonstrated to sustain a protective
order). This Court in Deford similarly stated that "[w]here a
business is the party seeking protection, it will have to show

that disclosure would cause significant harm to its competitive and financial position. That showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." 120 F.R.D. at 653.

In determining whether defendants have met their burden to show "good cause" for maintaining the confidentiality of the material at issue under Rule 26, the Court will consider the 16 documents as set forth by defendants in three categories: (1) tax returns (Plaintiffs' Exhibit 25) and materials related to defendants' financial statements (Plaintiffs' Exhibits 10-A, 33, and 16); (2) Prosperity Mortgage's formation and related operations documents (Plaintiffs' Exhibits 3, 15, 21, 23, 28, 29, 39, 41, and 42); and (3) information regarding costs/payment of services provided (Plaintiffs' Exhibits 26, 45, and 50).[5] (ECF No. 192, 10-16).

### 1. Defendants' Tax Returns (Plaintiffs' Exhibit 25) and Materials Related to Defendants' Financial Statements (Plaintiffs' Exhibits 10-A, 33, and 16)

---

[5] These categories are substantially similar to the three categories set forth in plaintiffs' reply memorandum, namely "(a) Prosperity formation documents; (b) tax returns and financial statements; and (c) documents discussing the fees Prosperity pays Wells Fargo for running its business." (ECF No. 235, 12).

According to defendants, Plaintiffs' Exhibit 25 includes "Prosperity Mortgage's federal, state, and local tax returns," which "detail, among other things, Prosperity Mortgage's income information, asset values, capitalization information, expenses, cost structure, accounting methodologies, tax preferences, profit margins, and profit distributions." (ECF No. 192, 10-11). Defendants maintain that Plaintiffs' Exhibits 10-A, 33, and 16 contain financial statements "which are not relied upon or cited to by plaintiffs, lay bare detailed and confidential financial information regarding the operation of Prosperity Mortgage's business, including assets and liabilities, income and expenses, including the amounts paid with respect to servicing the agreement, and notes regarding Prosperity Mortgage's accounting methodologies." (ECF No. 192, 12).

Plaintiffs do not object to retaining the "confidential" designation for Prosperity's tax returns and financial statements (ECF No. 235, 15), with the exception of a single line item to which plaintiffs cite in their Class Certification Memorandum indicating that Prosperity pays no interest on its Wells Fargo line of credit. (Id., 12-13). Indeed, plaintiffs state that they "...agree that those portions of Defendants' tax returns and financial statements not cited in Plaintiffs' class certification papers – which is most of the content of those

27

documents – may be designated as confidential." (Id. at 3 n.1).

When given an opportunity to be heard on this proposition during
the December 1, 2010 motions hearing, defendants voiced no
opposition to the disclosure of the discrete portions of
defendants' tax returns and financial statements cited in
Plaintiffs' Class Certification Memorandum.  In addition,
although defendants maintain that the tax returns at issue were
produced as "confidential" and "subject to the existing
protective order" pursuant to this Court's order dated December
16, 2009 (ECF No. 192, 11)[6], they have not demonstrated that the
specific portion of Prosperity's tax returns referenced in
Plaintiffs' Class Certification Memorandum falls within the
definition of material covered under Rule 26(c)(7), or that
disclosure of this information would cause defendants
identifiable harm.

For these reasons, the Court finds that Prosperity's tax
returns (ECF No.186-25) and financial statements (ECF Nos. 186-
10A, 186-33, and 186-16) must be re-designated as "not

_____

[6] The crux of the Court's December 16, 2009 order in this case was
that defendants' tax returns are not privileged, and are
therefore discoverable.  (ECF No. 156, 10).  While the Court
ordered the production of the tax returns subject to the
existing protective order, the Court was not presented with the
question posed here – the publication of one line of one tax
form that has been used in submissions to the Court on a key
motion.

confidential," but redacted so that only the precise portions cited in Plaintiffs' Class Certification Memorandum are disclosed to the public.  Accordingly, portions of Plaintiffs' Class Certification Memorandum referencing Prosperity's tax returns and financial statements in the context of plaintiffs' assertion that Prosperity pays no interest on its Wells Fargo line of credit need not be redacted nor filed under seal.

### 2. Prosperity Mortgage's Formation and Related Operations Documents (Plaintiffs' Exhibits 3, 15, 21, 23, 28, 29, 39, 41, and 42)

Defendants seek to maintain the "confidential" designation of certain documents pertaining to the formation and operation of Prosperity Mortgage, including the following: Joe Jackson Declaration dated June 23, 2008 ("Jackson Declaration I")(ECF No. 186-41); Randal Krout Declaration dated July 9, 2008 ("Krout Declaration I")(ECF No. 186-23); Mortgage Joint Venture Agreement (ECF No. 186-3); Amendment to Capital Contribution (ECF No. 186-15); Asset Purchase Agreement (ECF No. 186-21); Demand Note (ECF No. 186-29); Service Agreement with Wells Fargo (formerly Norwest)(ECF No. 186-28); Service Agreement with Walker Jackson Mortgage Corporation (formerly Prosperity Mortgage Corporation)(ECF No. 186-39); and a 2006 Addendum to

the Servicing Agreement with Wells Fargo Bank and Wells Fargo

Ventures (ECF No. 186-42).[7]

Defendants in their motion in opposition (ECF No. 192) and

through the supporting affidavit of Joe Jackson, Senior Vice

President of Wells Fargo, dated August 6, 2010 (ECF No. 194)

advance a number of arguments pertaining to Prosperity

Mortgage's formation and operations documents. (ECF Nos. 192,

194).  Defendants maintain that "[e]ach of the entities derive

independent economic value, both actual and potential, from this

information, and would suffer competitive injury if such

---

[7]The Court notes that of these nine documents, six were
previously filed under seal by order of the court in conjunction
with defendants' joint motion for summary judgment (ECF No. 40)
and corresponding reply motion (ECF No. 71).  Specifically, in
conjunction with their joint motion for summary judgment,
defendants filed the Krout Declaration I (ECF No. 40-5) and the
Jackson Declaration I with the Mortgage Venture Agreement,
Amendment to Capital Contribution, and Service Agreement with
Wells Fargo attached thereto (ECF No. 40-4).  In conjunction
with their reply motion in support of defendants' joint motion
for summary judgment, defendants filed the Declaration of Joe
Jackson dated November 20, 2008 ("Jackson Declaration II") with
the Asset Purchase Agreement attached thereto.  (ECF No. 71-5).
As defendants point out in their opposition to the underlying
motion, plaintiffs did not object at that time to the filing of
these documents under seal.  (ECF No. 192, 8 n.6).  However,
neither of these observations forecloses the Court's analysis
here.  If anything, the fact that these documents were
previously filed with the Court in conjunction with a
dispositive motion is an indication that a robust public right
of access weighs against maintaining confidentiality.  See
Rushford, 846 F.2d at 253 (holding that the First Amendment
public right of access standard, rather than the less rigorous
common law standard, applies to documents filed with the trial
court as attachments to a summary judgment motion in a civil
case).

information was generally known to, and readily ascertainable by, other persons, including competitors, who may obtain economic value from their disclosure or use." (ECF No. 194, 10). As discussed above, the Rule 26 "good cause" standard is particularly exacting with regard to confidential business information. Where a business seeks protection, it must make "specific demonstrations of fact, supported where possible by affidavits and concrete examples," demonstrating that disclosure will result in clearly defined and very serious injury to its competitive and financial position. Deford, 120 F.R.D. at 653. Defendants have failed to satisfy their burden here.

Defendants assert that the Jackson Declaration I (ECF No. 186-41) and the Krout Declaration I (ECF No. 186-23) detail confidential business information, including the amount that Prosperity Mortgage compensates Wells Fargo Bank pursuant to their service contract; the amount that Prosperity Mortgage compensates Long & Foster pursuant to their service contract; Prosperity Mortgage's capitalization levels; and pricing information indicating that Prosperity Mortgage has discretion to adjust its prices to remain competitive in the marketplace. (ECF No. 192, 13, 23).

Although the Jackson Declaration I and Krout Declaration I admittedly provide a fuller picture of defendants' current

business structure than other documents in this category, defendants have not demonstrated that disclosure of the specific information therein **would cause them** "clearly defined and very serious injury." United States v. IBM Corp., 67 F.R.D. 40, 46 (S.D.N.Y.1975). For example, as discussed *infra*, the lump sum that Prosperity Mortgage pays to Wells Fargo and Long & Foster for a bundle of services will not enable competitors to disaggregate the amount paid for each service. In addition, it is common knowledge that mortgage lenders typically have some discretion in adjusting prices in the marketplace; the revelation that Prosperity Mortgage brokers may in some circumstances award borrowers a "local subsidy" of up to three-eighths of a point will not cause serious competitive injury. Similarly, the basic structure and function of Prosperity Mortgage's Operating Committee or the standard warranties it makes to borrowers is the type of information that is common to corporations generally. See (ECF No. 186-23, 4, 11). Further, much of the information disclosed in the declarations is publicly available, such as the location of Prosperity Mortgage's operation centers or that Prosperity Mortgage attracts customers using methods such as circulars, signage, and its website. See (ECF No. 186-23, 7).

Defendants also argue that the formation documents themselves provide economic value to defendants because they "continue to be used as a template for the formation of other joint ventures." (ECF No. 192, 14). It is highly relevant to the Court's analysis of defendants' "economic value" and "competitive injury" arguments that many of the formation documents at issue were executed in 1993.[8] These documents have arguably "lost whatever competitive advantage they may have given [defendants]." (ECF No. 235, 16). "While staleness of the information sought to be protected is not an absolute bar to issuance of an order, it is a factor which must be overcome by a specific showing of present harm." Deford, 120 F.R.D. at 654 (citing Zenith, 529 F.Supp. at 891). "Speculative allegations of injury from the disclosure of years-old information are not sufficient to warrant issuance of a protective order." Id. (citing United States v. Exxon Corp., 94 F.R.D. 250, 252 (D.D.C. 1991); United States v. IBM, 67 F.R.D. 40, 47-49 (S.D.N.Y. 1975)).

---

[8] Specifically, the Mortgage Joint Venture Agreement (ECF No. 186-3), Asset Purchase Agreement (ECF No. 186-21), Demand Note (ECF No. 186-29), Service Agreement with Wells Fargo (ECF No. 186-28), and Service Agreement with Walker Jackson Mortgage Corporation (formerly Prosperity Mortgage Corporation)(ECF No. 186-39) were executed in 1993.

Defendants assert that, although roughly 17 years old, the formation documents when taken together "lay out the framework for Prosperity Mortgage's entire business structure, the disclosure of which would reveal strategic business decisions regarding the joint venture's operations." (ECF No. 192, 14). In addition, Mr. Jackson's affidavit provides that "although modified over time in practice, and although there are variations in the formation documents for each of the Wells Fargo joint ventures," the formation documents "continue to be used as a template for the formation and operation of other joint ventures." (ECF No. 194, 12). It is evident from defendants' arguments that the 1993 formation documents do not present a clear picture of defendants' <u>current</u> business structure and strategies. Rather, defendants essentially suggest that competitors could extrapolate current confidential practices by amassing information from various outdated formation documents. The value of the information at issue "as a matrix with which to construct [defendants'] present strategies is too speculative." <u>United States v. IBM Corp.</u>, 67 F.R.D. 40, 48 (S.D.N.Y.1975).

The two remaining documents (ECF Nos. 186-15; 186-42), which were not executed along with the bulk of the formation and operations materials in 1993, likewise do not merit

"confidential" status.  Although executed in 2007, and therefore
not subject to the same staleness considerations as the majority
of the formation documents, the Amended Joint Venture Agreement
merely modifies the language of section 4.01 of the original
Mortgage Joint Venture Agreement slightly.  (ECF No. 186-15).
Similarly, the Addendum to the service agreement between
Prosperity Mortgage and Wells Fargo simply adds to the original
agreement dated December 1, 1993 a provision providing for the
availability of management training and development courses.
(ECF No. 186-42).  The addendum states that these services will
be made available "from time to time at the prices published by
[Wells Fargo Home Mortgage]."  The document includes no specific
terms about pricing or the like. <u>See</u> (<u>Id.</u>).

Given that defendants have failed to show good cause for
their confidential designation of various documents related to
the formation and operation of Prosperity Mortgage, Plaintiffs'
Exhibits 3, 15, 21, 23, 28, 29, 39, 41, and 42 are hereby
declassified.

<u>3. Information Regarding Costs/Payment of Services Provided
(Plaintiffs' Exhibits 26, 45, and 50)</u>

According to defendants, "Plaintiffs' Exhibits 26, 45, and
50 include internal email communications and portions of
deposition testimony, all of which provide further details
regarding the confidential payment terms of the Service

Agreement between Prosperity Mortgage and Wells Fargo Bank (commonly referred to as the "service fee," "home office allocation," home office fee," or "management fee")."  (ECF No. 192, 14).  Describing the harm that they would suffer upon disclosure of this information, defendants state that "Wells Fargo's competitors in the marketplace could directly use Wells Fargo's proprietary allocation methodology to structure a competitive response that would disadvantage Wells Fargo in its business operations and competitive negotiations with potential joint venture partners."  (ECF No. 192, 15).

The first of the three documents in this category contains excerpts from the June 8, 2010 deposition testimony of Joe Jackson, Senior Vice President of Wells Fargo Bank, N.A., discussing the amount of interest paid by Prosperity Mortgage in 1998 and the "home office fee" paid by Prosperity Mortgage to Wells Fargo.  (ECF No. 186-26).  In his affidavit in support of defendants' opposition to the underlying motion, Mr. Jackson does not address the confidentiality of the excerpted deposition testimony in particular.  Mr. Jackson states generally that disclosure of defendant's home office fee allocation methodology would allow competitors to structure a competitive response that would disadvantage Wells Fargo.  (ECF No. 194, 14-15).  The first of the three brief deposition excerpts included in the

document at issue does not in any way address this subject; it pertains to Prosperity Mortgage's interest payments in 2008. (ECF No. 186-26, 2).  The remaining deposition excerpts ostensibly pertain to fees paid from Prosperity Mortgage to Wells Fargo for services provided.  See (ECF No. 186-26, 3-5). However, the excerpted testimony, particularly taken out of context as it is here, clearly does not provide sufficient information to enable defendants' competitors to ascertain defendants' allocation methodology.  Thus, the Court finds insufficient justification for maintaining the confidentiality of this document.

According to Mr. Jackson's supporting affidavit, the second document in this group of exhibits (ECF No. 186-45) is a "December 2007 email string addressing, among other confidential information, budgeted numbers for the 2008 service fee allocation and comparison with costs associated with Wells Fargo retail branches."  (ECF No. 194, 14).  Mr. Jackson describes the third document in this category (ECF No. 186-50) as an "email chain from March 2006 including breakout of service fees on annual basis from 1997 through 2005."  (ECF No. 194, 14).  Based upon the Court's review of the documents in question, these descriptions are accurate.

The Krout Declaration I discussed above indicates that the services provided by Wells Fargo to Prosperity include "use of Wells Fargo's proprietary loan origination system, including its underwriting system, legal services, maintenance of Prosperity's books and records, and access to on-line training programs." (ECF No. 186-23, 10-11). Similarly, the Jackson Declaration I states that, "the services offered by Wells Fargo Bank to Prosperity include, but are not limited to: (1) legal services, (2) accounting services, (3) human resources, (4) data processing, (5) assignment processing, (6) post closing services, (7) facilities management, (8) quality control, (9) management consulting, (10) marketing, (11) risk financing, (12) promotions, public relations, and advertising, (13) compliance with credit agreements, and (14) training, including on-line management and development courses." (ECF No. 186-41, 5). It is clear from these descriptions that Wells Fargo provides a bundle of services to Prosperity Mortgage.

The figures set forth in the December 2007 and March 2006 email strings described above do not reveal defendants' home office fee allocation methodology in the sense that they do not disaggregate the compensation Prosperity Mortgage pays to Wells Fargo for these various services." <u>See</u> (ECF No. 186-45; 186-50). As plaintiffs aptly argue in their reply brief, the service

fee is not broken down or priced by its constituent services; it is an undifferentiated, flat fee for 15 or more separate services. NO competitor could possibly break down that aggregate fee information in order to adjust its costs for any specific service and thereby compete more effectively against [defendants]." (ECF No. 235, 18).

Given the aggregate nature of the information presented in the two email chains in question, defendants have failed to articulate the particularized competitive harm they face if the information is disclosed to the public, including defendants' competitors. Thus, defendants have not satisfied their burden to show "good cause" for the protection of these documents under Rule 26. Accordingly, the Court hereby finds that Plaintiffs' Exhibits 26, 45, and 50 shall not retain confidential status and corresponding portions of Plaintiffs' Class Certification Memorandum need not remain sealed.

Given that defendants have failed to show good cause for the continued protection as confidential of the material at issue here, the Court need not reach the issue of whether a common law or First Amendment public right of access attaches to the documents filed as exhibits to Plaintiffs' Class Certification Memorandum. The Court notes, however, that the common law presumes the right of the public to inspect and copy

all judicial records, such as a motion filed with the court and exhibits thereto.  <u>Virginia Dep't of State Police</u>, 386 F.3d at 575.  This presumption can be rebutted "if countervailing interests heavily outweigh the public interests in access." <u>Rushford</u>, 846 F.2d at 253.  Where the First Amendment provides a right of access, however, "denial must be necessitated by a compelling government interest and narrowly tailored to serve that interest."  <u>Id.</u>  The First Amendment right of access has been held expressly to apply to documents made part of dispositive civil motions.  <u>See id.</u>  Although the Fourth Circuit has not explicitly held that a First Amendment right of access exists with regard to non-dispositive civil motions such as the motion for class certification at issue here, precedent favors access to information within the court's control.  <u>See</u> (ECF No. 118); <u>Minter v. Wells Fargo Bank, N.A.</u>, 258 F.R.D. 118 (D.Md. 2009)(discussing broad application of First Amendment protection to non-dispositive motions and materials).

### III. CONCLUSION

For the reasons discussed above, the Court DENIES plaintiffs' request for wholesale declassification of discovery material designated as "confidential" by defendants.  However, given defendants' failure to make designations in "good faith" as required by the Confidentiality Order, necessitating at least

in part this motion, the Court hereby awards attorney's fees in the amount of $10,000 pursuant to its authority under Rule 37(a)(5).  In addition, the Court finds that defendants have failed to satisfy their burden to show "good cause" for the confidential designation of documents filed as exhibits to Plaintiffs' Class Certification Memorandum, as required by Rule 26(c).  Thus, the Court hereby GRANTS plaintiffs' request to remove the "confidential" designation from the following exhibits 3, 10-A, 15, 16, 21, 23, 25, 26, 28, 29, 33, 39, 41, 42, 45, 50 to Plaintiffs' Class Certification Memorandum.  <u>See</u> (ECF No. 185).  Given this result, Plaintiffs' Class Certification Memorandum need not remain under seal. Notwithstanding, defendants must have an opportunity to redact the documents related to defendants' tax returns and financial statements included Plaintiffs' Exhibits 25, 10-A, 16, and 33 prior to disclosure in conformity with the Court's opinion as set forth above.


Date: 12/23/10 _____          _____/s/_____
                                Susan K. Gauvey
                                United States Magistrate Judge