**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DENISE MINTER <u>et al.</u>          *
                                     *
          v.                         *   Civil Action WMN-07-3442
                                     *
WELLS FARGO BANK, N.A. <u>et al.</u>   *

*    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Pending before the Court is Plaintiffs' Motion for Certification of the Tolling Class, ECF No. 264. The motion is fully briefed and ripe for review.[1] Upon consideration of the pleadings, facts and applicable law, the Court determines that no hearing is necessary, Local Rule 105.6, and the Motion for Certification of the Tolling Class will be granted in part.

**I. Background**

As already summarized in this Court's memorandum dated May 3, 2011 (May 3 Memo), this litigation arises out of

> Plaintiff's theory that that Prosperity Mortgage Company (Prosperity), the product of a joint venture between Wells Fargo Bank, N.A. (Wells Fargo) and Long & Foster Real Estate, Inc. (Long & Foster), operated not as an independent mortgage lender but rather as a mere front organization formed to circumvent legislation designed to prevent market-distorting business practices within the real estate settlement services industry.

---

[1] Defendants have also filed a Motion for Leave to File Surreply in Further Opposition to Plaintiff's Motion, ECF No. 290, which Plaintiffs have opposed. As the proposed surreply does not respond to new arguments but merely rehashes arguments made in Defendants' Opposition for the purpose of pointing out a concession in Plaintiffs' Reply that was fully evident to the Court upon its own reading, the motion will be denied.

ECF No. 253 at 2. Plaintiffs allege violations of: Sections 8(a), 8(c) and 8(c)(4) of the Real Estate Settlement Procedures Act (RESPA); the Racketeer Influenced and Corrupt Organizations Act (RICO); the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§ 13-101, et seq. (CPA); and derivative tort claims.

Plaintiffs initially sought certification for a class consisting of all consumers who transacted with Prosperity at any time from Prosperity's formation in 1993 to the present. ECF No. 185. The Court noted, however, that certification of a class for the entire eighteen year period was problematic for two primary reasons: one, the claims of the majority of the proposed class arise outside of RESPA's one-year statute of limitations, and so would have to be equitably tolled before those class members could pursue their claims; and two, Prosperity's business operations markedly changed around the time of the December 26, 2006, statute of limitations date, requiring different inquiries into the claims of those who transacted with Prosperity during the two time periods. ECF No. 253 at 54.

To enable a more accurate analysis of the different types of plaintiffs, the Court bifurcated Plaintiffs' proposed class into a "Timely Class," containing those class members whose claims fall within the statues of limitations, i.e., arising

after December 26, 2006, and a "Tolling Class," for those whose claims arise prior to December 26, 2006, and thus must be equitably tolled before being pursued further. Id. at 55. The Named Plaintiffs at the time class certification was initially sought were Denise Minter, Jason Alborough and Rachel Alborough, all of whom had entered into transactions after December 26, 2006, and so were members of the Timely Class. The Court granted certification for the Timely Class, but declined to grant certification for the Tolling Class because it lacked a representative member whose claim arose during the tolling period and so could be "sufficiently typical and adequate." Id. at 60.

The Court specifically noted, however, that "if Plaintiffs wish to pursue Tolling Class claims premised on RESPA Section 8(c) in this litigation, they may identify and designate a proper class representative and move the Court to that end." Id. Plaintiffs responded and amended the complaint to include a new Named Plaintiff, Lizbeth Binks, whose transaction with Prosperity took place prior to December 26, 2006, ECF No. 263 at 4, and have now moved to certify the Tolling Class with Ms. Binks as its representative. Plaintiffs' proposed class definition is:

> All consumers who have obtained a federally related
> mortgage loan originated by Prosperity Mortgage Company
> that was funded by transfers from a line of credit at Wells

> Fargo Bank, any of its subsidiaries or any of their
> predecessors, before December 26, 2006.

ECF No. 264. Plaintiffs seek certification of the Tolling Class for the following RESPA claims[2]: Section 8(c) sham-controlled entity claim, Section 8(c)(4)(A) inadequate ABA disclosure claim, and Section 8(a) kickback claim. In its May 3 Memo, the Court declined to certify a class for the Section 8(a) kickback claim because this claim only pertains to clients who transacted with Prosperity after being referred there by Long & Foster. ECF No. 253 at 59. Certifying this subclass would "unnecessarily complicate and obscure the larger question" of the case, that regarding the legitimacy or illegitimacy of Prosperity. Id. As this still holds true, the Court will not revisit this issue for the Tolling Class, and will confine its analysis to whether the Tolling Class can be certified for the remaining two RESPA claims.

## II. Class Certification

As the Court outlined in its May 3 Memo, the legal standard required to certify a plaintiff class is set forth in Federal Rule of Civil Procedure 23. Rule 23(a) requires the party seeking certification to demonstrate that:

---

[2] The Court notes that Ms. Binks only seeks to represent the Tolling Class for claims brought under RESPA and is not seeking to represent a tolling class for claims made pursuant to RICO or Maryland state law. Reply at 7 and FN2. Thus the class will only be certified for claims brought under RESPA.

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements are boiled down to the elements of numerosity, commonality, typicality and adequacy of representation. All four elements must be satisfied, though "the final three requirements of Rule 23(a)'tend to merge,' with commonality and typicality 'serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998) and Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157, n.13 (1982)).

Additionally, Plaintiff must demonstrate that the putative class satisfies at least one of the conditions of Rule 23(b). In this case, Plaintiff must meet the conditions of Rule 23(b)(3),[3] which require that:

---

[3] This Court determined in its May 3 Memo that Rule 23(b)(3) is the most appropriate avenue for certification in this case. See ECF No. 253 at n. 6.

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

At the certification stage, the Court need not undertake, and should in fact avoid, an evaluation of the merits of the underlying claim. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) (noting that there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"). Notwithstanding, as "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982) (internal quotations omitted), some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. See Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004)("the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits"). "Questions regarding the certification of a class action are left to the sound discretion of the district court and any such decision by the district court will only be reversed upon a

showing of abuse of that discretion." <u>Stott v. Haworth</u>, 916

F.2d 134, 139 (4th Cir. 1990).

## III. Discussion

The motion <u>sub judice</u> requests that the Court certify a

class created for purposes of equitably tolling the statute of

limitations for claims brought under Section 8 of RESPA.[4]  In the

Fourth Circuit, a plaintiff can invoke the doctrine of equitable

tolling by satisfying each element of a three part test:

> (1) The party pleading the statute of limitations
> fraudulently concealed facts that are the basis of the
> plaintiff's claim, and (2) the plaintiff failed to discover
> those facts within the statutory period despite (3) the
> exercise of due diligence.

<u>Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.</u>, 71

F.3d 119, 122 (4th Cir. 1995).  To satisfy the first element,

plaintiff must provide evidence of affirmative acts of

concealment undertaken by the defendants, which may include acts

of concealment involved in the alleged statutory violation

itself.  <u>Id.</u> at 125-126.  To satisfy the due diligence

requirement, a plaintiff need not undertake any specific inquiry

into that which was concealed but must establish that it was not

aware of, and should not have been aware of, any facts that

---

[4] RESPA claims brought by a private litigant, such as those
alleged in the complaint, must be brought within one year of the
date on which the violation occurred.  12 U.S.C. § 2614.
Notwithstanding, this Court decided in its May 3 Memo that
equitable tolling of the statute of limitations is available
under RESPA.  ECF No. 253 at 10.

should have provoked such inquiry.  Minter v. Wells Fargo Bank,
375 F. Supp. 2d 591, 596 (D. Md. 2009) (Gauvey, Mag. J.); Meadow
Gold Dairies, 71 F.3d at 128.  Satisfying these requirements
demonstrates that the plaintiff did not act negligently in
failing to discover the cause of action and did not unreasonably
delay in bringing its action, and so reserves the tolling of the
limitations period until the plaintiff discovers the concealed
fraud.  Meadow Gold Dairies, 71 F.3d at 122 (citing Bailey v.
Glover, 88 U.S. 342, 349 (1874)).

Named Plaintiff claims that she is entitled to equitable
tolling of her RESPA claims because Defendants concealed from
her the fact that Prosperity was an illegitimate sham-controlled
entity under the HUD Ten Factor Test, and she failed to discover
this fact prior to the running of the statute of limitations,
despite exercising due diligence.  According to Named Plaintiff,
Prosperity appeared to perform legitimate services and provided
official documentation indicating that it was entitled to and
would receive fees at closing.  She argues that this, however,
was all allegedly a sham as Wells Fargo,[5] not Prosperity,
performed the bulk of the lending services, provided the funding
for the loan, and collected the fees at closing, which it later
split with Long & Foster.  That this was a sham was concealed

---

[5] This reference to Wells Fargo includes Wells Fargo's prior
incarnation as Norwest Mortgage, Inc.

from borrowers by Prosperity affirmatively creating a façade of official documentation, such as letters, notice forms, and the HUD-1 Settlement Form, and employing a standard process in which Prosperity appeared to be engaged as a mortgage lender providing necessary and legitimate services. This alleged charade lulled borrowers into a false sense of security so they were not provoked to make any further inquiries into the arrangement and so satisfied their due diligence requirement. Finally, borrowers did not discover that they had a claim until after the limitations period had run and the sham was revealed during depositions taken in July 2007, in <u>Robinson v. Fountainhead Title Group Corporation</u>, case number 03-CV-3106-WMN (D. Md).

This argument goes hand in hand with Ms. Binks' argument in favor of tolling her inadequate disclosure claim. She argues that because she was unaware that Prosperity was a sham entity, she could not have known that her referral to Prosperity was a <u>de facto</u> referral to Wells Fargo. Therefore she did not know that her transaction with Prosperity would create a financial benefit for both Wells Fargo and Long & Foster, and so she could not have discovered that the ABA Disclosure Forms with which she was provided as part of her transaction were in fact inadequate for failing to make these disclosures. Again, Defendants allegedly concealed their RESPA violations through the façade of official documentation that purported to make all necessary

legal disclosures, and this façade prevented Ms. Binks from
becoming aware that an inquiry into the adequacy of the content
of the disclosure forms would be prudent.  The inadequacy of the
disclosures, therefore, was not, and could not be, discovered
until Ms. Binks became aware that Prosperity was a sham.

To determine whether Ms. Binks' proposed equitable tolling
analysis can be completed on a class-wide basis, the Court must
decide whether she can satisfy the conditions of Rule 23(a) and
(b)(3) with respect to the arguments and defenses that will be
raised when debating the merits of equitable tolling.[6]
Defendants do not dispute that the proposed class meets the
requirements for numerosity, as was already decided by this
Court in the May 3 Memo.[7]  ECF 253 No. at 56.

---

[6] Despite the fact that much of Defendants' opposition argues
that Named Plaintiff's claim cannot be equitably tolled, as
stated supra, the Court's ruling on the present motion need not,
and should not, reach the merits of equitable tolling.

[7] In addition to disputing that Ms. Binks satisfies the elements
of Rule 23, Defendants also argue that Ms. Binks does not have
standing to represent the putative class.  Defendants say this
is so because Ms. Binks "cannot establish tolling as to her own
untimely RESPA claim."  ECF No. 274 at 22.  This argument,
however, assumes a finding against Ms. Binks on the merits, a
finding which would be premature for the Court to make at this
juncture.  While some of the Court's analysis may involve a
preliminary inquiry into the merits, the Court's analysis of the
present motion is limited to the Rule 23 factors, see Gariety,
368 F.3d at 366; if the Rule 23 factors are satisfied, then Ms.
Binks can proceed as class representative.  It is only once this
decision is made that, upon further pleadings, the issue of
whether the claims will be tolled will be ripe for decision.

## A. Typicality

As discussed in the May 3 Memo, typicality asks whether the claims of the named plaintiff —and any defenses to such claims— are typical of the claims and defenses of the putative class. The test is "whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims and defenses." Robinson v. Fountainhead Title Group Corp., 252 F.R.D. 275, 288 (D. Md. 2008) (internal quotations omitted). Notably, "[f]actual differences will not necessarily render a claim atypical," provided the named plaintiff's claim is predicated on the same course of conduct and legal theory as the claims of the class. Smith v. The Baltimore & Ohio R.R. Co., 473 F. Supp. 572, 581 (D. Md. 1979).

Ms. Binks' claims are typical of those advanced by prospective class members. Like Ms. Binks, all prospective class members must rely on the same legal theory of equitable tolling in order for their claims to survive the statute of limitations. Furthermore, like Ms. Binks, all prospective class members rely on the same course of conduct perpetrated by Defendant when arguing the elements of equitable tolling, specifically that this conduct (1) concealed their claims and (2) lulled them into believing in the legitimacy of Prosperity without provoking them to make any inquiry into potential

claims.  As discussed above, Ms. Binks' arguments in favor of
equitable tolling arise out of the Defendants' course of conduct
at the time of loan origination, specifically their engagement
in a charade of seemingly legitimate lending practices.

Transactions between lenders and prospective homeowners are
fairly uniform, particularly because such borrowers have no real
leverage to negotiate the terms of the lending relationship.

Therefore, and because there is no evidence to the contrary, the
Court concludes that Prosperity, like other home mortgage
lenders, engaged in a uniform and consistent course of conduct
with its prospective borrowers that would have varied little, if
at all, from transaction to transaction.[8]  As such, Named
Plaintiff and tolling class members will point to the same

---

[8] Defendants argue that Prosperity's operations changed over the
proposed eighteen year class period, and so Ms. Binks, whose
transaction took place in 2006, is not an appropriate class
representative for all claims going back to 1993.  They point
specifically to changes in capitalization, changes in timing
related to sale of Prosperity loans on the secondary market,
changes in use of office space and stand-alone processing
centers, and variations in the level of underwriting performed
by Prosperity employees.  Opp. 11-13.  These variations involve
the inner workings of Prosperity that do not directly involve
borrowers, so it is not clear to the Court that these changes
would have led to a different transactional experience for a
borrower in 1993 as opposed to a borrower in early 2006.  In so
far as the changes affect the analysis of the merits of the sham
entity claim itself, the changes occurred at discrete points in
time, thus it should be reasonably easy to determine which set
of factors applies to which time period, and then determine
which class members transacted with Prosperity during that time
period.

course of conduct in support of equitable tolling, making Ms.
Binks' claim typical of that advanced by class members.

## B. Commonality and Predominance

Commonality bears upon the presence of legal or factual
questions common among all putative class members' claims.  It
"requires the plaintiff to demonstrate that the class members
have suffered the same injury."  Wal-Mart Stores, Inc. v. Dukes,
131 S. Ct. 2541, 2551 (2011)(internal citation omitted).  Class
members' claims must depend upon a common contention, and that
common contention "must be of such a nature that it is capable
of class-wide resolution -- which means that determination of
its truth or falsity will resolve an issue that is central to
the validity of each one of the claims in one stroke."  Id.  It
is not enough that the class members raise common questions;
these common questions must also have the capacity "to generate
common answers apt to drive the resolution of the litigation."
Id. (quoting Nagareda, Class Certification in the Age of
Aggregate Proof, 84 N. Y. U. L. Rev. 97, 132 (2009)) (emphasis
in original).

While predominance also bears upon the presence of common
elements among the class members' claims, it is a more demanding
requirement in that it requires that common issues predominate
over any individualized legal or factual issues and form the
core of the dispute.  Fed. R. Civ. P. 23(b)(3); Amchem Prods.,

521 U.S. at 624. Nevertheless, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." Id. at 625.

Lastly, given that Rule 23 class action certification serves the "important public purposes" of "promoting judicial economy and efficiency" and "afford[ing] aggrieved persons a remedy [when] it is not economically feasible to obtain relief through the traditional framework of multiple individual actions," "federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best service the ends of justice for the affected parties and . . . promote judicial economy." Gunnells, 348 F.3d at 424 (internal quotations omitted).

The proposed class satisfies the requirements of commonality and predominance because the claim for equitable tolling, which is shared by all class members, depends on the common contention that the uniform and consistent process through which Prosperity engaged with borrowers was a charade that concealed Prosperity's status as a sham entity in violation of RESPA. A determination of whether or not this alleged course of conduct satisfies the requirements of equitable tolling will resolve the threshold issue that is central to all class members' ability to continue litigating their claims. The test

14

for equitable tolling relies on Prosperity's uniform and consistent course of conduct, so there is no need to inquire into transaction-specific details.  Either this course of conduct was a charade engaged in by Defendants to conceal potential RESPA claims from plaintiffs, or it was not.  Therefore the tolling of the Tolling Class' claims will rise or fall along with the tolling of Ms. Binks' claims.

Defendants argue that equitable tolling in this case is not appropriate for class treatment because individualized issues will predominate over any issues the court deems common to the class.  They argue that several of the key issues of equitable tolling, particularly whether class members performed due diligence and whether class members were aware of, or should have been aware of, their potential RESPA claims prior to the running of the statute of limitations, require individualized inquiries that will overwhelm the common issues and make class treatment unwarranted and unmanageable.

Defendants argue that determining due diligence will require mini-trials to discover "what each borrower saw, read and understood; the varying levels of each borrower's sophistication; and what level of due diligence, if any, was exercised."  Opp. at 31.  They argue that they will need to conduct individualized inquiry into each transaction to determine the contents of the ABA Disclosure Form provided to

each borrower and what additional information each borrower may have received about Wells Fargo's role in the transaction. Defendants further argue that they are entitled to introduce individualized evidence that borrowers should have been on notice of Prosperity's affiliation through publically available information, such as the use of a wellsfargo.com email address by Prosperity loan officers, loan officers identifying themselves as Wells Fargo "Home Mortgage Consultants," individual webpages used by Prosperity loan officers located at wellfargo.com internet addresses, and the Prosperity and Long & Foster websites which expressly disclosed the relationship between Wells Fargo and Prosperity. Opp. at 31-32. Such evidence must be introduced on an individual basis, they argue, because the nature and frequency of communications between borrower and loan officer varied transaction by transaction.

First, these arguments fail to acknowledge that due diligence is evaluated using an objective standard, so a borrower's level of sophistication is irrelevant to the inquiry. Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1263; see also Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993)(discussing "[t]he objective standard of due diligence"). Second, as discussed supra, the Court has determined that all borrowers went through generally the same uniform and consistent process when transacting with Prosperity. Though it would be

unreasonable to expect that Prosperity borrowers in 1993 received identical documentation and information to that received by borrowers in 2003, the parties need not analyze every piece of paper that every borrower received to gain a general understanding of the type of information provided and to make a determination on the merits of whether or not that information would have lulled the borrower into a false sense of legitimacy, as it did to Ms. Binks, or should have provoked a borrower to inquire further into whether Prosperity was actually performing legitimate services.  If the Court determines that a borrower should have been provoked to make further inquiry, then the burden will be on individual class members to demonstrate that they did inquire further to such an extent as to satisfy due diligence.  This may be accomplished on an individualized basis, but these individual inquiries will surely not predominate over the common questions of whether Prosperity's alleged sham status was indeed concealed and whether Ms. Binks and class members were justifiably lulled by the façade of legitimacy into not probing into Prosperity's operations.[9]

---

[9] The Court suspects that even if it determines that the information generally and publically available to borrowers should have provoked further inquiry, the burden created by the need for individual inquiries will be minimal because there will be few class members able to come forward and state that they made inquiries into Prosperity's operations.  Named Plaintiff does not allege that she made any such inquiries, nor is there evidence at this point that suggests others made such inquiries.

Similarly, Defendants argue that an individualized inquiry will be necessary to determine "[w]hether any class member was aware of . . . their potential RESPA claim" prior to the running of the limitations period for his or her particular claim.[10] Opp. 23. Once again, the Court acknowledges that some individualized inquiry may be necessary to resolve these issues, but that fact will not defeat class certification if common issues predominate over these inquiries. Before reaching this potentially individual issue, the Court will need to determine the common issues of whether Defendants' course of conduct served to conceal class members' potential claims and whether any information received during that common course of conduct should have provoked class members to inquire into Prosperity's affiliations and operations. If those issues are decided such that there was concealment and class members met the due diligence requirement without engaging in further inquiry, then

_____

Moreover, once a person, like the class members, who is in the process of house-hunting finds "the one," he or she is apt to ask few questions of the lender in favor of getting the deal done and buying the house. See Binks dep. at 126 ("But by the time we got to closing, all I wanted to do was buy the house, so I didn't ask any questions there.") This is especially likely because class member's transactions took place prior to the subprime mortgage crisis, when people were less skeptical of financial institutions.

[10] Defendants also include inquiry into whether class members "should have been aware of" their claim during the class period, but this goes to the due diligence requirement, which was already discussed.

there will likely be little need to inquire individually with class members to see if somehow they knew about their claim, because the concealment alone suggests that they would not have known.  In other words, two threshold common issues need to be decided in Named Plaintiff's favor before Defendants need delve into individualized inquiries as part of their defense for this third element.

Defendants cite several cases to support their arguments against certifying the Tolling Class.  Many of these cases are used to argue the merits of Ms. Binks' equitable tolling, and so are not dispositive for the issue of class certification.  <u>See e.g.</u>, cases cited in Opp. 19-20, 22, 28-30.  Furthermore, the two cases cited that reject class certification for purposes of equitably tolling a statute of limitations are distinguishable from the pending case.  In <u>Broussard v. Meineke Discount Muffler Shops</u>, 155 F.3d 331 (4th Cir. 1998), the Fourth Circuit reversed the district court's grant of class certification for a plaintiff class consisting of Meineke franchisees who claimed Meineke mishandled franchise advertising.  This decision was based on a number of issues that revealed a lack of commonality and typicality among class members and because class members had conflicting interests with respect to the recovery they sought. With respect to the tolling of class members' misrepresentation and breach of contract claims, the Fourth Circuit recognized

that a decision would depend on "individualized showings that are non-typical and unique to each franchisee." Id. at 342. This is because franchisees entered into contracts that varied materially from each other, had different amounts of information when they entered into those contracts, were exposed to different alleged oral misrepresentations, and relied on those representations to different degrees. Id. Unlike the class members in Broussard, members of the proposed tolling class were not involved in unique transactions and subject to materially varying contract terms, and were subject to generally the same information that was both publically available and presented in the course of a standard mortgage transaction, therefore the need for individual inquiries is minimal. Furthermore, the Fourth Circuit enunciated five major obstacles to certifying the Broussard class, only one of which had to do with the need to make individualized inquiries. Certifying the proposed tolling class does not present so many potential obstacles as there is no conflict of interest among class members and class members' claims are based on a common course of conduct.

Likewise, the present case is distinguishable from that of Thorn v. Jefferson-Pilot Life Insurance Company, 445 F.3d 311 (4th Cir. 2006). In Thorn, the Fourth Circuit affirmed the district court's denial of class certification based on the failure of common issues to predominate over individual issues,

as the defendant's statute of limitations defense could not be resolved on a class-wide basis. Id. at 321. The proposed class was made up of African-Americans who purchased life insurance policies over an 89 year period and were charged higher premiums than white policyholders. The life insurance industry commonly used this dual-rate structure, and this fact became known to the public at large. To mount a defense, individual class members needed to prove that they did not have notice of this dual-rate practice until a time at which the claim could accrue within the limitations period. The Court determined that this would require individual hearings as it was not sufficient to make a general determination about when "the public" or an "average citizen" became of aware of this practice, and make that the date of accrual for all class members' claims. Id. at 322. The facts in Thorn are distinguishable from those in the present case because in Thorn not all plaintiffs were exposed to the same information and it is possible that some class members had learned about the dual-rate practice, while others had not. This is the not the case for tolling class members, who were all exposed to the same information when engaged in their standard lending transactions. Moreover, the publicly available information in Thorn clearly revealed the discriminatory practices, so the determination of when a class member learned of this information was dispositive to the statute of

limitations defense.  In the present case, the information
publicly available to all tolling class members did not clearly
reveal, if it does so at all, that Prosperity is a sham entity,
so the dispositive analysis is whether that information should
have put a person on inquiry notice, not whether a class member
was aware of the information.  Furthermore, as in <u>Broussard</u>, the
Court's denial of class certification was based on other factors
in addition to the need for individual inquiries; it also
determined that litigation on a class basis would be
unmanageable because of the need to apply the law from one of
four different states, and possibly federal law, to supply the
limitations period and rules of equitable tolling for each class
member, and because of the difficulty in evaluating damages on a
common basis.  <u>Id.</u> at 327-328.  Class certification in the
present case does not present these same issues.

The facts in the present case are more analogous to those
in <u>Veal v. Crown Auto Dealerships, Inc.</u>, 236 F.R.D. 572 (M.D.
Fla. 2006).  In <u>Veal</u>, the plaintiff alleged that the defendant
"engaged in deceptive and unfair business practices," by which
it routinely misled consumers into believing that its product
provided a valuable benefit, when in fact it provided little to
no benefit and merely served to provide a profit to defendant.
<u>Id.</u> at 575.  Plaintiff's transaction took place outside the
limitations period, so he and other similarly situated class

members argued to equitably toll their claims. The court found that class certification was appropriate and common issues predominated because the tolling argument was based on the allegation that defendant "engaged in a deceptive scheme" that was common to the purported class, and served to conceal plaintiff's cause of action. Id. at 580. The equitable tolling argument, therefore, depended on the common issue of "whether Plaintiff [could] establish Defendant engaged in a fraudulent scheme to conceal the true cost and benefit of [its] product, thereby, concealing the [statutory] violation and Plaintiff's cause of action." Id. This is squarely analogous with Ms. Binks' equitable tolling theory in the present case, in which she alleges that the Defendants engaged in a deceptive practice common to all class members that concealed from class members the fact that Prosperity itself added little value to the lending transaction and merely served as a conduit through which the Defendants were able to profit at the expense of class members.

**C. Adequacy**

Adequacy of representation of the class is closely related to both commonality and typicality. Robinson, 252 F.R.D. at 288. Here, the Court must ask whether the proposed action will fairly and adequately protect the interests of the class, whether the plaintiff's counsel is competent and qualified to

manage the case, and whether the named plaintiff's interests are antagonistic to those of the putative class.  Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997).  Taken together, commonality, typicality and adequacy demand that "a class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156.

Ms. Binks satisfies the adequacy requirement because her shared interest will compel her to zealously litigate the case on behalf of the class, as she has done in the past as class representative in a related case, Brittingham v. Prosperity Mortgage Company, Case No. 1:09-cv-0826-WMN; her counsel is competent and have proved as much via several other similar lawsuits; and her interests are directly in line with —and not antagonistic toward— those of the putative class.

Despite these qualifications, Defendants suggest that Ms. Binks is not an adequate representative because she will not be able to successfully toll her own claims.  Specifically, Defendants argue that (1) Ms. Binks should have known about her RESPA claim prior to the expiration of the limitations period because the Wells Fargo-Prosperity relationship, and the fact that Long & Foster would benefit from the referral, was disclosed to her in writing prior to closing, and (2) that Ms. Binks did not exercise the requisite due diligence to entitle

her to equitable tolling because she failed to ask any questions at or after closing, despite admittedly feeling unsettled by the amount of closing costs and suspecting that they may have been "padded". Opp. 19 (citing Binks Dep. at 124-127). The first argument fails because Ms. Binks stands in the same position as other tolling class members with respect to whether the disclosures provided during a standard transaction should have put claimants on notice that the disclosures were inadequate and that Prosperity was a sham entity; if Ms. Binks should have known, then all class members should have known, so she is an adequate and typical representative.

The second argument fails because Ms. Binks' theory of equitable tolling argues that she and fellow borrowers were lulled into falsely believing that Prosperity was performing legitimate services, and therefore was not required to make any specific inquiry as part of their due diligence because there was nothing that should have provoked them to do so. Closing costs are a part of every real estate transaction, so the fact that Ms. Binks had to pay a fee to Prosperity at closing would not have provoked inquiry. Ms. Binks' statement in her deposition that she had concerns about the amount of closing costs but chose to not make a big issue of them is consistent with this theory; she chose not to dig deeply into the propriety of the closing costs because she just wanted to buy the house

and had no reason to suspect that Prosperity was actually a sham that should not have been entitled to collect any fees for its so-called services.  This is the same false sense of security alleged by class members, so Ms. Binks is a typical and adequate representative despite not deeply inquiring into her closing costs.

### D. Rule 23(b) Superiority

Superiority requires that class treatment of the claims is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  As stated in the May 3 Memo, Allowing Plaintiffs to proceed as a class action meets the requirement of superiority because it promotes justice by providing class members, who would not have sufficient incentive to pursue their claims individually, access to the courts to seek vindication of their rights.  ECF No. 253 at 63; see also Gunnells v. Healthplan Servs., 348 F.3d 417, 426 (4th Cir. 2003) (suggesting that if it is likely that "in the absence of class certification, very few claims would be brought," adjudication through class action is superior to no adjudication of the matter at all).  Furthermore, the Court does not share Defendants' concern that proceeding as a class will be too unmanageable because of the need for individualized evidence.  As already thoroughly discussed, much of the equitable tolling decision will rely on common theories and

common evidence, so the Court does not foresee the need for a significant amount of individual inquiry. Furthermore, as noted in the May 3 Memo, when certifying both the Timely class and a class in the companion case, <u>Petry v. Prosperity Mortgage Co</u>, case no. WMN-08-1642, Plaintiff's counsel have already litigated at least two similar cases before this Court without issue, ECF No. 253 at 64, so the Court does not foresee any problems in the present case.[11] Moreover, class certification in this case is likely to reduce litigation costs and conserve important judicial resources due to the consolidation of the large amount of common issues shared by class members. <u>See</u> <u>Gunnells</u>, 348 F.3d at 427. Finally, as the class action is binding on all class members, <u>see</u> Fed R. Civ. P. 23(c)(2)(B), class certification protects the defendant from inconsistent adjudication by providing a single proceeding in which to determine the merits of the plaintiffs' claims. <u>Gunnells</u>, 348 F.3d at 427 (citing 5 Moore's Federal Practice § 23.02 (1999)).

---

[11] While the Court does not foresee the need to do so, it notes that if, as the parties begin to delve deeply into the arguments regarding equitable tolling, manageability becomes a significant problem and overwhelms the advantages of certification, the Court has discretion to decertify the class. <u>See Central Wesleyan College v. W.R. Grace & Co.</u>, 6 F.3d 177, 189-90 (4th Cir. 1993).

Therefore, class certification is a superior mode of litigating the Tolling Class' claims.[12]

## VI.  CONCLUSION

For the foregoing reasons, the Court will grant in part Plaintiffs' Motion for Class Certification of the tolling class. The Court will certify the following class definition:

> All consumers, excluding individuals whose transactions involved property located in Washington, D.C., who have obtained a federally related mortgage loan originated by Prosperity Mortgage Company that was funded by transfers from a line of credit at Wells Fargo Bank, any of its subsidiaries or any of their predecessors, before December 26, 2006.

This class will be certified for RESPA claims brought under Section 8(c) and 8(c)(4)(A).  The Court will issue a separate Order to this effect.

/s/
_____
William M. Nickerson
Senior United States District Judge

January 5, 2012

_____

[12] Defendants renew their argument that if a tolling class is certified, it may not include individuals whose transactions concerned properties located in Washington, D.C. (D.C. Plaintiffs) because the D.C. Circuit Court of Appeals has held that equitable tolling is not available under RESPA.  Opp. at n. 17; see Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039 (D.C. Cir. 1986).  The Court agrees.  The jurisdictional provision of RESPA limits plaintiffs to bringing suit in the United States district court for the "district in which the property involved is located, or where the violation is alleged to have occurred. . ."  12 U.S.C. § 2614.  As D.C. Plaintiffs could not toll their RESPA claims if they filed suit in the D.C. Circuit, they cannot avail themselves of the equitable tolling doctrine by joining a class in the Fourth Circuit.  Therefore, absent a showing that they could have brought their claims outside the D.C. Circuit, the tolling class will not include individuals whose transactions involved properties located in Washington, D.C.