**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DENISE MINTER et al. | * | |
| | * | |
| v. | * | Civil Action WMN-07-3442 |
| | * | |
| WELLS FARGO BANK, N.A. et al. | * | |
| | * | |
| | * | |
| BRADLEY PETRY et al. | * | |
| | * | |
| v. | * | Civil Action WMN-08-1642 |
| | * | |
| PROSPERITY MORTGAGE CO. et al. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM**

Pending before the Court is Plaintiffs' Motion to Direct Notice and Administrative Schedule, ECF No. 293.[1]  Defendants Wells Fargo Bank, N.A. and Wells Fargo Ventures, LLC (collectively, Wells Fargo) filed an opposition, ECF No. 342, which Defendants Prosperity Mortgage Company, Long & Foster Real Estate, Inc., and Walker Jackson Mortgage Corporation joined, ECF No. 343.[2]  The motion is now ripe.[3]  Upon review of the

---

[1] All ECF numbers refer to filings in the Minter case.

[2] This filing is inaccurately characterized on the Case Management/Electronic Case Filing system as a "Joint Motion for Joinder."  Though it is entitled "Joinder of Response to Plaintiffs' Motions," it is not a motion for joinder, but rather simply a means through which the Defendants that did not file their own opposition noted their support for the opposition filed by Wells Fargo.  The Court will direct the Clerk to correct CM/ECF to accurately reflect the nature of the filing.

[3] Defendant Wells Fargo has also filed a Motion for Leave To File A Sur-Reply To Address New Issues Raised in Plaintiffs' Reply in

pleadings and the applicable case law, the Court has determined
that no hearing is necessary, Local Rule 105.6, and that the
motion will be granted, consistent with the conditions set forth
in this memorandum.

I.    FACTS AND PROCEDURAL HISTORY

On May 3, 2011, the Court granted Plaintiffs' Motions for
Class Certification in the related captioned matters, <u>Minter</u> and
<u>Petry</u>, certifying a class spanning the entire time period in
question in <u>Petry</u>, a "timely" class in <u>Minter</u>, and leaving open
the possibility for certification of a "tolling" class in
<u>Minter</u>.  ECF No. 254.  On January 5, 2012, the Court granted
Plaintiffs' Motion for Certification of the <u>Minter</u> tolling
class.  ECF No. 308.  On March 14, 2012, the Court granted
Plaintiffs' Motion to Modify the RICO Class Definition to
accurately reflect the RICO statute of limitations.  ECF No.

---

Support of Motion to Direct Notice and Administrative Schedule.
ECF No. 355.  Plaintiffs argue that this surreply should not be
permitted because it only addresses issues already discussed in
the Opposition and responded to in the Reply, and so does not
respond to matters raised for the first time in the Reply.  The
Court disagrees.  It is true that Wells Fargo addressed the
feasibility of providing bill stuffer notice in its Opposition
and Plaintiffs refuted those arguments by citing a class action
in which Wells Fargo provided exactly the type of notice they
rejected as unfeasible.  The Court finds, however, that the
filing of a surreply is warranted because it addresses evidence
raised for the first time in the reply.  The surreply provides
context for this evidence that will aid the Court in reaching a
just decision.  As such, the Court will grant the motion for
leave to file a surreply.

333.  As a result of these decisions, there currently exist the
following certified classes:

Minter:

All consumers who have obtained a federally related
mortgage loan originated by Prosperity Mortgage Company
that was funded by transfers from a line of credit at Wells
Fargo Bank, any of its subsidiaries or any of their
predecessors.  Excluded from the class are individuals
whose transactions involved property located in Washington,
D.C., if their transaction closed prior to December 26,
2003.

Petry:

All persons who entered into a mortgage loan transaction
secured by real estate located in Maryland where (1)
Prosperity Mortgage (2) is identified as the mortgage
lender in the operative documents relating to the
transaction, (3) Prosperity Mortgage received a fee for
services in the transaction, and (4) the loan was funded
through a Wells Fargo line of credit

The class period for the Minter Tolling Class and for the

Petry class goes back to 1993, the year Prosperity began

originating mortgage loans.  The parties estimate that there are

approximately 143,153 loans that have been certified for class

treatment and, because many of those loans involved co-

borrowers, over 217,000 class members.  Opp'n at 4.

On October 13, 2011, Plaintiffs filed the instant motion

requesting the Court to direct notice to members of the above

named classes and establish an administrative schedule for the

notice process.  ECF No. 293.  Defendants have opposed portions

of the motion.  There are four main areas of disagreement

between the parties: (1) the content of the notices, (2) the
method of providing individual notice, (3) the production of
social security numbers by Wells Fargo to Class Counsel, and (4)
publication of the notice.

**II.  DISCUSSION**

**A. Content of Notices**

The parties have provided for the Court's review proposed
versions of several different notice forms.  The parties have
largely agreed on the content of these documents, but have left
a few issues to the resolution of the Court.

First, the parties agree to the content of the postcard
that will be sent to individuals who are only members of the
Minter class.  This postcard is attached to Plaintiffs' Reply as
Exhibit 5.  ECF No. 347-5.

Second, Plaintiffs contest Defendants' proposed inclusion
of the phrase, "The two separate lawsuits have not been
consolidated for trial," in the postcard that will be sent to
individuals that are part of both the Minter and Petry classes.
This postcard is attached to Plaintiffs' Reply as Exhibit 6.
ECF No. 347-6.  Plaintiffs contend that such language is
misleading, as the lawsuits may in the future be consolidated,
and also suggest that it is irrelevant and unnecessary subject
matter for class notice.  The Court agrees that, as currently
phrased, it is misleading.  Notwithstanding, this information is

4

helpful to make clear to class members that the classes involve
two separate matters.  As such, the Court will direct that the
sentence be rephrased to read, "The two separate lawsuits have
not been consolidated for trial at this time."

Third, Plaintiffs contest Defendants' proposed inclusion in
the long-form <u>Minter</u> Class Notice of the phrase,

> For those class members whose loan transactions closed
> prior to December 26, 2006, class members will have to
> establish that their claims are not barred by RESPA's
> statute of limitations through the doctrine of equitable
> tolling.

This long-form notice is attached to Plaintiffs' Reply as
Exhibit 7.[4]  ECF No. 347-7.  Plaintiffs contend that such phrase
is misleading because it suggests that individual class members
will have to come to Court to make individual showings, which is
not consistent with the Court's decision that the tolling issue
is appropriate for class treatment.  The Court agrees that the
statement is misleading.  Notwithstanding, it is important that
potential class members be fully informed about the scope of the
class when deciding whether to opt-out.  The form currently
proposed by Plaintiffs does not apprise potential class members
that some of their claims are subject to the additional hurdle

---

[4] In comparing the forms proposed by the two parties, the Court
also notes that Plaintiffs' most recent version reinserts the
word "sham" in the last sentence of page 1, even though it had
been previously removed by Defendants.  As using the phrase
"illegal sham" is redundant, the Court agrees that the deletion
of the word "sham" is appropriate, and orders Plaintiffs to
revise the notice accordingly.

of equitable tolling.  In order that potential class members are
provided with accurate and complete information, the Court will
direct that the sentence be rephrased to read:

> For those class members whose loan transactions closed
> prior to December 26, 2006, the class will have to
> establish that the claims of those members are not barred
> by RESPA's statute of limitations through the doctrine of
> equitable tolling.

Fourth, Plaintiffs contest Defendants proposed inclusion of
two different phrases in the long-form <u>Petry</u> Class Notice.  This
long-form notice is attached to Plaintiffs' Reply as Exhibit 8.
ECF No. 347-8.  Plaintiffs reject the inclusion of the sentence,
"The Court certified for class treatment claims under the
Maryland Finder's Fee Act and the common law claims of unjust
enrichment, restitution, and conspiracy," on page 2 of the
notice as incomplete and superfluous.  Plaintiffs also reject
the inclusion of the phrase on page 5 that states that there is
"substantial discovery" yet to be completed, and notes that
Defendants did not include the same phrase in the proposed
<u>Minter</u> long-form notice.  The Court agrees that both phrases are
unnecessary and their deletion is appropriate.

Finally, the parties have each provided proposed
Administrative Orders for the Court's review.  The Court has
retained the time table set forth by the parties but revised the
proposals to accurately reflect its decision, <u>infra</u>, regarding

how notice is to be disseminated.  "Administrative Order Number One," as revised by the Court, will issue separately.

### B. Method of Providing Individual Notice

#### 1. Via Regular Mail

Plaintiffs have proposed that that notice be provided to potential class members via mailing of postcard notices, the content of which is described supra.  Plaintiffs indicate that Class Counsel will mail the notice to potential class members who do not receive monthly mortgage statements from Wells Fargo, and propose that Wells Fargo be ordered to enclose the notice with monthly mortgage statement for the remaining potential class members whose mortgage loans are serviced by Wells Fargo. This form of notice is known as "bill stuffer notice." Plaintiffs do not indicate which party will bear the cost to effect notice using the bill stuffer method, though presumably this omission means that Plaintiffs intend for the burden to fall to Wells Fargo.

Wells Fargo strongly objects to the bill stuffer proposal. It argues that there is no way for it to efficiently or practically enclose the notice form in the mortgage statements for the subset of its mortgage customers who are potential class members because mortgage statements are sent out to customers using an automated system.  Wells Fargo indicates that it services millions of loans, only a small fraction of which fall

within the class definitions, and that its automated system does
not have the capability to identify which loans fall within the
classes.  Therefore, if Wells Fargo was to send notice to
potential class members, it would have to segregate potential
class members' statements from the automated billing process and
stuff them separately.[5]  Wells Fargo estimated that it would take
at least 90 days and cost over $500,000 to provide notice to
those class members whose loans it services using a bill stuffer
method.  See McCauley Decl., ECF No. 342-7 at ¶ 22. Furthermore,
Wells Fargo argues, Plaintiffs have failed to provide any
justification to shift the burden and cost of providing notice
to Defendants.

---

[5] Plaintiffs suggest that Wells Fargo is being less than truthful
in making these assertions, and point to a California class
action, Gutierrez v. Wells Fargo Bank N.A., et al., Case No. 07-
5923 (N.D. Cal.), in which Wells Fargo itself advocated bill
stuffer notice "as more efficient and cheaper than separate
direct mailing by plaintiffs."  Reply at 3 (referring to Ex. 1,
"Gutierrez Stipulated Notice Plan and Order").  Wells Fargo
points out, however, that the Gutierrez case involved a
completely different Wells Fargo division, the retail banking
division.  Surreply at 2-3.  Wells Fargo explains that the
retail banking division uses a different billing system and
vendor process than the mortgage servicing system at issue in
the present matter.  Therefore, it argues, just because bill
stuffer notice was feasible for the Gutierrez class does not
mean that it is also feasible for the Minter and Petry classes.
    The Court accepts Wells Fargo's explanation and agrees that
the Gutierrez case is distinguishable.  As such, it would not be
reasonable to hold the Defendants in the present case to the
notice proposal made in the Gutierrez case.

The Court agrees with Wells Fargo that Plaintiffs must bear both the responsibility and costs to direct notice.  As set out by the Supreme Court, "[t]he general rule must be that the representative plaintiff should perform the tasks [necessary to send the class notice], for it is he who seeks to maintain the suit as a class action and to represent other members of his class."  Oppenheimer Fund v. Sanders, 437 U.S. 340, 356 (1978). Moreover, in most cases, "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178-179 (1974).  The Supreme Court acknowledges, however, that it may be appropriate for the Court to order the defendant to perform certain tasks related to providing notice if the defendant is able to perform such task "with less difficulty or expense than could the representative plaintiff."  Oppenheimer, 437 U.S. at 356.  In such cases, however, the Court will generally require that the plaintiff bear the costs for such tasks, unless, for example, such tasks are already performed in the ordinary course of defendant's business or the expense is "so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff."  Id. at 359.

Plaintiffs attempt to support their argument that Wells Fargo should provide bill stuffer notice by pointing out that it would cost twice as much for Class Counsel to send notice to all

class members, instead of only $50,000 to send notice to only
those class members whose loans Wells Fargo is not servicing.
Reply at 3.  This cost differential, they suggest, illustrates
the efficiencies gained from requiring Wells Fargo to provide
bill stuffer notice to part of the class instead of requiring
Class Counsel to provide direct notice to the entire class.

This argument is misleading, however, because the reason it
will cost twice as much for Class Counsel to provide notice to
the entire class as opposed to just the portion of the class
that is not serviced by Wells Fargo is that the entire class is
approximately twice as large as just that portion of the class
not serviced by Wells Fargo.[6]  The cost per class member[7] does
not vary based on the number of class members for which
Plaintiffs themselves must provide notice, and the $50,000 cost
for Plaintiffs to provide notice to Wells Fargo's customers is
substantially less than the $500,000 Wells Fargo represents it
would cost to provide notice via bill stuffer to those same
class members.  It is not clear that there is any cost-savings

---

[6] Wells Fargo services approximately 49% of the loans in the
Minter class and 54% of the loans in the Petry class.  See Opp'n
at 4.

[7] The Court notes that though Plaintiffs' projected cost to
direct notice to the entire class is a substantial figure (just
over $100,000), when this figure is considered in view of the
size of the class (over 143,000 loans or 217,000 individuals),
the cost per potential class member is much more reasonable
(approximately $.70 per loan or $.46 per class member).

or efficiency to be gained by requiring Wells Fargo to provide
bill stuffer notice, and as such, the Court will deny
Plaintiffs' request that Wells Fargo provide such notice and
instead direct that Plaintiffs bear the responsibility to
provide notice to all class members.[8]

### 2. Via Email

Plaintiffs also propose that Wells Fargo be ordered to
provide notice via email to its customers who receive monthly
email notifications when their mortgage statements become
available for viewing.  Wells Fargo opposes this proposal,
stating that it "does not have a 'system in place to efficiently
distribute' notice by e-mail."  Opp'n at 8 (quoting Houghtlin
Decl. at ¶ 7).  Wells Fargo further explains that in order to
effect notice via email it would first have to identify which of
its current customers that receive emails notifying them of
statement availability are class members and then design and
implement a specific email containing the appropriate form of
class notice directed to only those individuals.  Opp'n at 9.
Wells Fargo does not provide an estimate of the time and cost

---

[8] The Court also notes that, as Plaintiffs failed to provide any
reason to justify shifting the costs of bill stuffer notice to
Wells Fargo, if the Court determined that such method of notice
was appropriate Plaintiffs would have been required to pay such
costs.  In light of Wells Fargo's estimate that it would cost
$500,000 to effect such notice, however, the Court assumes that
Plaintiffs would prefer to complete the task of giving notice
themselves.

involved if it was required to provide notice in this manner, but the Court assumes that it would be substantial, as these are not tasks that Wells Fargo would otherwise perform in the course of its ordinary business.

Plaintiffs only rebuttal to these arguments is denying the truth of Wells Fargo's statements regarding the difficulty of providing class notice via email by pointing to a distinguishable case, see supra note 5, in which Wells Fargo provided notice in this manner.[9]

Plaintiff has not established that it would be less difficult or expensive for Wells Fargo to provide notice using its email billing-notification system than to require Plaintiffs to provide notice to these same class members via individual mailings.  Furthermore, Wells Fargo indicates that it likely only has current email addresses for a minority of class members, so any savings gleaned by reduced printing and postage costs is likely minimal and certainly outweighed by the cost of time and labor for Wells Fargo to effect email notice.  As such, Plaintiffs may not shift the burden of providing notice to Wells Fargo, and the Court will order that Plaintiffs direct notice to all potential class members via individual mailing.

### C. Production of Social Security Numbers

---

[9] Notably, Plaintiffs again fail to state which party would bear the cost if Wells Fargo was required to provide notice using its email billing-notification system.

In their Motion, Plaintiffs indicate that they may find it necessary to request that Defendants produce social security numbers and telephone numbers for specific class members that they have difficulty locating.  Mot. at ¶ 4a.  They further explain in their Reply that such information will help Class Counsel obtain current addresses for class members who have moved away from the property they financed with a Prosperity mortgage, noting that locating class members may be particularly difficult in this case because the class includes borrowers whose loans closed in the early 1990s.  Reply at 11-12.

Wells Fargo objects to this request, raising the issue of their customers' privacy interest in confidential and personal information.  Opp'n at 12 n. 11.  Wells Fargo points to this Court's decision in Benway v. Resource Real Estate Services, LLC, to support its objection.  In Benway, another RESPA class action, the Court determined that the defendants were not required to produce social security numbers absent "some further showing of necessity by Plaintiffs."  Slip Op. No. 05-3250 at 4 (D. Md. Jan. 16, 2007).  In that case, the class period spanned a little over two years, so the likelihood that class members had moved and plaintiffs would need to obtain up-to-date addresses was fairly low.  See id. at 3 (Order dated January 16, 2007, stated that "the proposed notice of class action should

refer to potential class members whose transaction occurred on or after October 25, 2004"). The present case, however, is distinguishable because it is highly likely that a large number of the class members, some who closed on loans nearly 20 years ago, have relocated, necessitating Class Counsel's use of social security numbers to obtain up-to-date address information in order to fulfill the notice requirements of Rule 23(c)(2).[10]

The Court instead will follow its ruling in Robinson v. Fountainhead Title Group Corp., another RESPA case: "in a case like this, where class members may have moved, [the provision of Social Security numbers] is more likely to provide a meaningful opportunity for class members to recognize their involvement in this case." Civ. No. 03-3106, 2009 WL 2842733, *1 (D. Md. Sept. 4, 2009).[11] As such, the Court will overrule Defendants'

---

[10] Wells Fargo notes that it does not have current mailing addresses for 49% of the class.

[11] A number of cases have recognized this same proposition and have required the disclosure of this information. See, e.g., Rees v. Souza's Milk Transp. Co., 2006 WL 3251829, *1 (E.D. Cal. Nov. 8, 2006) ("The disclosure of names, addresses, social security numbers . . . is a common practice in the class action context. It has been used, so that putative class members can be located, in a variety of contexts . . . ."); Upshaw v. Georgia Catalog Sales, Inc., 206 F.R.D. 694 (M.D. Ga. 2002) (ordering defendants to provide class list that included names, last known addresses, telephone numbers and social security numbers); see also Proctor v. Metropolitan Money Store Corp., No. 07-19157, ¶ 4 (D. Md. Aug. 4, 2009) (requiring defendants to provide a class list including the names, social security numbers, addresses, telephone numbers and date of transaction of each class member).

objection and require that, consistent with Administrative Order
Number One, Defendants produce the social security numbers and
telephone numbers for potential class members as necessary to
assist class counsel in providing the best notice practicable
pursuant to Rule 23(c)(2).[12]

### D. Publication of Notice

Wells Fargo argues that in addition to providing individual
notice by mail, Class Counsel should also be required to provide
notice via publication.  Wells Fargo suggests that notice by
mail-only will be insufficient to satisfy the requirements of
due process and Rule 23(c)(2) because the parties do not have
current addresses for nearly half of the potential class
members.  Plaintiffs oppose this suggestion and state that
requiring notice by publication would unnecessarily increase
costs and be duplicative of the notice provided by individual
mailings.

Because class action litigation is binding on all class
members unless a potential class member affirmatively opts-out,

---

[12] Wells Fargo also noted that social security information "is
not readily accessible," but does not explain why this is or the
difficulty that would be encountered if required to produce such
information.  As Class Counsel suggests it will not need social
security numbers for all class members, but only those it has
particular difficulty in contacting, such burden does not
outweigh the requirement to provide the best practicable notice
to potential class members.  This limitation also minimizes the
intrusion into class members' privacy interests, as it does not
require social security numbers to be produced on a class-wide
basis.

the notice requirement has due process implications. <u>See</u> <u>Eisen</u>
<u>v. Carlisle & Jacquelin</u>, 417 U.S. 156, 173 (1974). To satisfy
the requirements of due process, notice must be "reasonably
calculated, under all the circumstances, to apprise interested
parties of the pendency of the action and afford them an
opportunity to present their objections." <u>Mullane v. Central</u>
<u>Hanover Bank & Trust Co.</u>, 339 U.S. 306, 315 (1950). The method
chosen to effect notice must be "such as one desirious of
actually informing the absentee might reasonably adopt to
accomplish it." <u>Id.</u> This standard is a practical one, however,
and does not require that notice be provided to every single
class member if the circumstances would make such an expectation
unreasonable and impracticable. In such circumstances, notice
to a majority of those interested in the action is likely
sufficient to protect the interests of those absent. <u>Id.</u> at 319
("notice reasonably certain to reach most of those interested in
objecting is likely to safeguard the interests of all, since any
objection sustained would inure to the benefit of all"); <u>see</u>
<u>also</u> Wright, Miller & Kane, Federal Practice and Procedure:
Civil 3d § 1786.

Moreover, as this Court has already recognized in <u>Robinson</u>:

"It is beyond dispute . . . that notice by first class mail
ordinarily satisfies rule 23(c)(2)'s requirement that class
members receive 'the best notice practicable under the
circumstances.'" <u>Peters v. National R.R. Passenger Corp.</u>,
966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing <u>Eisen v.</u>

Carlisle & Jacquelin, 417 U.S. 156, 173-75 (1974)).  In
fact, the United States Supreme Court has often upheld the
use of first class mail as a method of notice reasonably
calculated to apprise interested parties of proceedings
affecting their rights despite the fact that "[t]he Supreme
Court is obviously aware[] that not every first-class
letter is received by the addressee." Peters, 966 F.2d at
1486 (citing, inter alia, Tulsa Professional Collection
Servs. Inc. v. Pope, 485 U.S. 478, 484, 491 (1988) (notice
to creditors of estate)).

2009 WL 2842733 at *1.  In the present case, all class members

have been identified by name from Defendants' records.

Defendants do not suggest that publication is necessary to reach

unknown class members, but only that it is necessary because of

the potential difficulty in contacting class members who have

moved away from their Prosperity-financed homes.  Class Counsel

has stated that it intends to use the National Change-of-Address

database to obtain current address information.  Though, as

Defendants point out, this database only retains change of

address information for a limited period of time,[13] Class Counsel

will also be able to utilize social security numbers and phone

numbers to locate class members whose contact information is not

available in the database.  By providing individual notice to

class members for whom Wells Fargo has current address

information and also providing notice to individuals that Class

---

[13] The U.S. Postal Service website indicates that the "full NCOA
Product contains . . . 48 months of permanent address changes."
https://www.usps.com/business/move-update.htm (last visited May
21, 2012)

Counsel is able to locate through additional tracing, the Court
is confident that individual mailing will be sufficient to
provide notice to the vast majority of potential class members,[14]
and thus satisfy the requirements of Rule 23(c)(2) without the
need for publication.

### III. CONCLUSION

For the above stated reasons, Plaintiffs' Motion to Direct
Notice and Administrative Schedule will be GRANTED as amended by
the Court.  A separate order consistent with this memorandum
will be issued.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: May 22, 2012

---

[14] A spreadsheet provided by Paul Mulholland, the President of a
company that provides assistance in the administration of class
action litigation and who was retained by Plaintiffs, indicates
that there is a "92% hit rate" when "skip tracing" using social
security numbers.  Opp'n at Ex. 2.  The Court notes that "skip
tracing" is a practice, often engaged in by collection agencies,
in which an agent seeks to locate a missing person using
identifying information, such as social security numbers.  See
United States v. Cummings, 395 F.3d 392, 394 (7th Cir. 2005).