```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

DENISE MINTER et al.              *
                                  *
          v.                      *    Civil Action WMN-07-3442
                                  *
WELLS FARGO BANK, N.A. et al.     *

    *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Pending before the Court are three motions filed by Defendants: Defendants' Conditional Motion Pursuant to 28 U.S.C § 1292(b) to Certify a Question of Law to the Fourth Circuit Court of Appeals, ECF No. 481; Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 475; and, Defendants' Motion to Decertify Tolling and Timely Classes, ECF No. 479.  The motions are all fully briefed and the Court heard oral argument on April 24, 2013.  Upon consideration of the papers, the parties' arguments, and the applicable law, the Court determines that (1) Defendants' conditional motion to certify a question of law and Defendants' motion to dismiss will be denied, and (2) Defendants' motion to decertify will be granted, in part, and denied, in part.

**I.   FACTUAL AND PROCEDURAL HISTORY**

The alleged facts of this case have now been laid out by the parties and the Court on numerous occasions and will not be

repeated here. See ECF Nos. 88, 253, 470. A very brief comment regarding the procedural posture is, however, necessary.

This case has been pending for over five years. Since May, 2011, it has been proceeding as a class action and, presently, there are more than 150,000 class members divided between the certified Timely and Tolling Classes. Over the years, the case has been pared down by Plaintiffs, see e.g. ECF No. 396 (Letter from Plaintiffs' Counsel to Court), and the Court. Most recently, the Court granted, in part, and denied, in part, motions for summary judgment filed by Defendants. ECF Nos. 470 & 471. Following that ruling, Plaintiffs' only remaining claims are for violations of certain provisions of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 et. seq., specifically, 12 U.S.C. § 2607(a)[1] and 2607(c). A four-week jury trial on liability issues is scheduled to start in less than two weeks.[2]

---

[1] Throughout this case, the parties and the Court have referred to 12 U.S.C. § 2607 as § 8, which stems from its place in the statute as enacted by Congress. See Real Estate Settlement Procedures Act of 1974, Pub. L. No. 93-533, 88 Stat. 1724.

[2] On April 23, 2013, the Court, by letter order, determined that only the Plaintiffs' class-certified claims under § 8(c) would be tried. Plaintiffs' individual claims under § 8(a) will be tried at a later date.

## II. DISCUSSION

### A. Defendants' Conditional Motion to Certify a Question of Law to the Fourth Circuit and Defendants' Motion to Dismiss for Lack of Jurisdiction

Defendants' motion to certify a question of law and their motion to dismiss offer little more than an additional confirmation that Defendants dispute Plaintiffs' theory of this case, this Court's prior holdings affirming that theory as valid, and the case law relied upon by the Court to make those determinations. See, e.g., ECF No. 514 at 4 ("with due respect to the Court, defendants continue to believe that this case is proceeding on theories that do not present a legally cognizable cause of action under RESPA."). As such, they can be quickly dispatched.

Defendants have requested that the Court certify a question to the Fourth Circuit regarding the viability of Plaintiffs' claims under § 8(c). ECF No. 481 at 2. While it is true that the question Defendants seek to have certified meets many of the requirements of 28 U.S.C. § 1292(b), other aspects of their motion give the Court pause. First, any delay in seeking certification must be reasonable. See, e.g., Morris v. Flaig, 511 F. Supp. 2d 282, 314-15 (E.D.N.Y. 2007); Century Pacific, Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008); see also Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 867 (4th Cir. 2001) (holding that weighing a delay in seeking

3

certification of a question of law is built into considerations of excusable neglect and lack of prejudice).  Here, Plaintiffs' legal theory was determined to be viable years ago, see ECF No. 253 at 48 (May 3, 2011, memorandum opinion holding "Plaintiffs' reading of RESPA is sound."), they made clear their intention to abandon any claim for economic damages eight months ago, see ECF No. 396, and the Court ruled on Defendants' summary judgment motions two months ago.[3]  Thus, the Court determines that Defendants have unreasonably delayed in seeking certification.  Second, while the Court may not lean as far as Plaintiffs in calling conditional nature of the motion "gimmicky," it fails to see the relevance of any connection to the motion for certification of a question of law to the Maryland Court of Appeals that is presently pending in <u>Petry v. Prosperity Mortgage Co.</u>, Civ. No. 08-1642.  That this case is related to <u>Petry</u> is certainly clear to the Court, but it will not decide Defendants' motion under § 1292(b) based on a goose and gander

---

[3] Defendants suggest that the Court's opinion on summary judgment provides a valid basis for this motion because the Court dismissed their assertion that Defendants are allowed to invoke § 8(c)(2) as a defense to liability.  The Court, however, did no such thing.  Rather, it simply restated the position taken by Plaintiffs.  Indeed, many legal questions surrounding the calculation of damages have not yet been decided, if damages are even warranted.  Thus, the Court's ruling on summary judgment does not provide any basis for Defendants' request to have their proposed question certified.

argument.  Defendants' motion for certification of a question of law will therefore be denied.

In Defendants' motion to dismiss they argue that Plaintiffs have not been injured within the meaning of Article III and that Plaintiffs cannot satisfy statutory standing requirements under RESPA.  The Court sees no need to review, in any detail, its understanding of Congress' intent when it passed RESPA, which Defendants acknowledge is the key in this inquiry.  ECF No. 476-1 at 10.  It should suffice to say, once again, that the right to be free from transaction-specific economic harm is not the only right that RESPA created[4] and that RESPA was intended to prevent practices that have market-distorting effects, such as those alleged by Plaintiffs here (i.e., Prosperity is a sham or an undisclosed ABA).  ECF No. 253 at 25-26 (citing Robinson v. Fountainhead Title Group Corp., 252 F.R.D. 275 (D. Md. 2008) ("Congress amended RESPA to exempt [ABAs] from liability only in certain circumstances because of the concern that the harm

---

[4] Defendants argue that RESPA does not create a personal right. The Court disagrees.  Defendant's argument runs counter to the tenor, if not the explicit language, of the Court's prior opinions, as well as authority from other courts.  See Alston v. Countrywide Financial Corp., 585 F.3d 753, 759 n.5 (3rd Cir. 2009) ("It would be difficult to craft wording [in RESPA] that more explicitly establishes a consumer's 'personal right' to bring suit for a section 8 violation" than the language contained in 12 U.S.C. § 2607(d)(2) providing that violators of § 8 "shall be . . . liable to the person . . . charged for the settlement service involved in the violation.") (internal quotations and citations omitted); Carter v. Welles-Bowen Realty, Inc., 553 F.3d 979, 989 (6th Cir. 2009).

5

caused by ABAs was not limited to an increase in settlement costs, but extended to a lack of impartiality in referrals and a general decrease in competition in the settlement services market.") (internal quotations and citations omitted)).  Thus, the harm resulting from a violation of RESPA "is not limited to inflating transaction-specific costs," but also includes a distortion of competition in the market.  ECF No. 253 at 35.  Against this background, the Court has little difficulty maintaining its conclusion that Plaintiffs have standing to pursue their claims without proving that they were economically damaged.  ECF No. 253 at 47-48 ("Plaintiffs . . . have standing to pursue their theory of liability under Section 8.") (citing Edwards v. First American Corp., 610 F.3d 514, 518 (9th Cir. 2010); Carter, 553 F.3d at 989; Alston, 585 F.3d at 755).

> **B. Defendants' Motion to Decertify Tolling and Timely Classes**

The Court's letter order of April 23, 2013, ECF No. 534, wherein it outlined the claims currently in play, and elements of proof required to establish Defendants' liability, should bring some clarity to the analysis of Defendants' motion to decertify.  For the reasons that follow, the Court will grant the motion as it relates to the Tolling Class, and deny the motion as it relates to the Timely Class, but limit the Timely Class so as to cure some of Defendants' overbreadth concerns.

**1. Legal Standard**

An order granting class certification is not an untouchable determination. As Fed. R. Civ. P. 23(c)(1)(C) provides, "an order that grants or denies class certification may be altered or amended before final judgment." Indeed, "an order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate." Stott v. Haworth, 916 F.2d 134, 139 (4th Cir. 1990) (emphasis added). The breadth of this obligation, however, is tempered by commentary in the Advisory Committee Notes which provide that altering certification is appropriate "upon fuller development of the facts." 1996 Amendment Advisory Committee Notes. Other commentators have cautioned that courts should be wary of motions to decertify which simply reargue certification "[i]n the absence of materially changed or clarified circumstances." 3 Newberg on Class Actions § 7:47 (4th ed. 2012). If such circumstances are present, however, a motion to decertify is reviewed against the same standards as a motion to certify (i.e., the requirements of Rule 23). Chisolm v. TranSouth Fin. Corp., 194 F.R.D. 538, 544 (E.D. Va. 2000).

**2. Tolling Class**

Defendants have moved to decertify the Tolling Class. On January 5, 2012 the Court certified a class composed of:

> All consumers, excluding individuals whose transactions involved property located in Washington, D.C., who have obtained a federally related mortgage loan originated by Prosperity Mortgage Company that was funded by transfers from a line of credit at Wells Fargo Bank, any of its subsidiaries or any of their predecessors, before December 26, 2006.

ECF No. 307 at 28. The claims of the members of this class fall outside of RESPA's one-year statute of limitations, which would thus need to be tolled for their claims to be viable.

The elements of equitable tolling must be established by the Tolling Class, in addition to the substantive elements of the alleged RESPA violations. And, as the Court has previously explained, equitable tolling is only available when "(1) the defendant fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." ECF No. 307 at 7 (quoting Supermarket of Marlington, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir. 1995)). "The circumstances under which equitable tolling has been permitted are therefore quite narrow." ECF No. 470 at 32-33 (quoting Chao v. Virginia Dept. of Transp., 291 F.3d 276, 283 (4th Cir. 2002)) (internal quotations omitted).

When the Court certified the Tolling Class it noted that it was possible that proving equitable tolling might become unmanageable and thus warrant the Court's exercise of discretion

to decertify the class. ECF No. 307 at 27 n.11. At summary judgment, the Court again expressed concern that proving tolling would be unmanageable. ECF No. 470 at 37-38. There, the Court denied Defendants' motion for summary judgment "as to [Named Plaintiff Lizbeth] Binks' claim" id. at 37, but stated that it would consider the viability of the class claim in light of its concerns about manageability after the trial in Petry where, by happenstance, the statute of limitations was twelve years, the same period covered by the Tolling Class. Id. The Court now determines that "the likely difficulties in managing a class action," by the Tolling Class, under the circumstances of this case, warrant decertification. Fed. R. Civ. P. 23(b)(3)(D).

The Court's concern about manageability revolves around the concealment and due diligence elements of tolling. When it certified the Tolling Class, the Court acknowledged that some level of individualized inquiry into due diligence would indeed be necessary. ECF No. 307 at 17-19. It stated, however, that

> [b]efore reaching this potentially individual issue, the Court will need to determine the common issues of whether Defendants' course of conduct served to conceal class members' potential claims and whether any information received during that common course of conduct should have provoked class members to inquire into Prosperity's affiliations and operations.

ECF No. 307 at 18. In its summary judgment opinion, the Court determined that a RESPA violation was not a self-concealing wrong which satisfies the fraudulent concealment element of

9

tolling.  ECF No. 470 at 35-36.  That decision should have eliminated one of Plaintiffs' theories for satisfying the elements of equitable tolling with obvious class-wide application.  Nonetheless, Plaintiffs continue to indicate that they intend to rely on the Defendants' alleged violation of RESPA to establish tolling.  See ECF No. 492 at 27 ("This active concealment is best shown by Prosperity's ABA disclosure.").  To be sure, Plaintiffs have produced other evidence that Prosperity held itself out as a lender.  See ECF No. 492 at 26 (discussing loan documents identifying Prosperity as lender).  But, that conduct is fraudulent only if Prosperity was, in fact, not a lender, which is the very violation of RESPA that Plaintiffs have alleged.  In light of the Court's holding that violations of RESPA are not self-concealing, individual class members' transactions are now more relevant to the concealment and due diligence inquiries of tolling.

Plaintiffs respond by suggesting that evidence from the class members' individual transactions "creates, at worst, a jury question whether Class members were on notice to inquire about the true roles of Prosperity and Wells Fargo in their transactions" and that "alone does not warrant decertification." ECF No. 492 at 26.  But, therein lies the manageability (or unmanageability) issue.  The problem is not that the circumstances of class members' transactions may create a jury

10

question; it is that it only creates that jury question as to some class members and not others.[5] Managing a class action where some class members had a duty to inquire while others did not, presents substantial logistical and mental challenges for the Court and jury which warrant decertification in this already complicated case.

Plaintiffs' most direct argument on manageability is likewise insufficient. They suggest that any manageability issues can and should be deferred until after the liability phase of the case. ECF No. 492 at 34. This is unworkable, however, because there are issues related to tolling such as fraudulent concealment which, if presented to the jury, may prejudice the Defendants on the Timely Class claims. The Court is unwilling to take that risk and will grant Defendants' motion to decertify the Tolling Class.

### 3. Timely Class

#### a. Decertification Is Not Appropriate

Defendants attack the Timely Class under both of Plaintiffs' theories of liability under § 8(c). With regard to

---

[5] The Court's concern at summary judgment regarding Binks' ability to show due diligence, ECF No. 470 at 36-37, illustrates the variety of circumstances likely to be included among the class members' transactions. It also calls into question whether Binks' claim is typical of the claims of the Tolling Class members, or even whether any individual's claim could be typical of such a class within the meaning of Fed. R. Civ. P. 23(a)(3).

Plaintiffs' claim under § 8(c)(4)(A) (the "broker theory"), they argue that proving that Prosperity's loans were table-funded by Wells Fargo cannot be done on a class-wide basis. ECF no. 479-1 at 32. As noted throughout this case, a table-funded transaction is one where "a loan is funded by a contemporaneous advance of loan funds and an assignment to the person advancing the funds." 24 C.F.R. § 3500.2(b). Defendants argue that establishing whether a loan was contemporaneously assigned to Wells Fargo cannot be done on a class-wide basis because individual loans remained on Prosperity's warehouse line of credit for varying amounts of time. ECF No. 479-1 at 33. The Court is unpersuaded by Defendants' argument, however, because Plaintiffs have produced evidence (1) suggesting that the amount of time that loans sat on the warehouse line before being credited by Wells Fargo is not the relevant measurement but, in any event, was done in a consistent and uniform manner, (2) containing admissions from Prosperity that its loans are table-funded by Wells Fargo and (3) indicating that Wells Fargo dominated the lending process to such a degree that Prosperity bore no risk in connection with the loans it made.

Defendants also argue that decertification is required because they are entitled to show that any compensation received from Plaintiffs was for actual services rendered pursuant to 12 U.S.C. 2607(c)(2), and that this evidence is not amenable to

class-wide proof.  ECF No 479-1 at 35.  That may be the case but, as outlined in the Court's April 23, 2013, letter, ECF No. 534, whether Defendants were compensated for actual services rendered has no bearing on a finding that Defendants are liable and thus Defendants' argument does not provide a basis for decertifying the class as it regards the alleged § 8(c)(4)(A) violation.[6]

Defendants argue that the Timely Class should be decertified as it relates to Plaintiffs' sham theory primarily because the HUD Ten Factor Test cannot be applied, or be manageably applied, on a class-wide basis.  The Court finds no merit in Defendants' contention.  The Court has previously explained that "[n]o single factor is determinative . . . rather, the factors are weighed in light of specific facts to determine whether a specific entity is a sham."  ECF No. 253 at 37.  Thus, while consideration of the changes to the test factors over the years is relevant to the jury's analysis, those changes do not suggest that application of the test to Prosperity cannot be done on a class-wide basis.[7]  Moreover, the

---

[6] If liability is established according to the elements set out by the Court, the Court will consider issues such as this one, which relate to the determination of damages, before the second phase of trial.

[7] One reasonable conclusion to be drawn from Defendants' argument is that they believe the test should be applied to Prosperity's operations at the time each loan is made.  See ECF No. 479-1 at

Court understands that application of the test may result in a complex and protracted trial (hence, the liability phase is scheduled for four weeks), but does not foresee it "degenerate[ing] into chaos as" Defendants seem to suggest. ECF No. 479-1 at 50 n. 41 (quoting Lloyd v. Gen. Motors Corp., 266 F.R.D. 98, 105 (D. Md. 2010)). Complexity, by itself, is not a basis for decertification. See generally Lloyd, 266 F.R.D. at 105.

In sum, Defendants' arguments are insufficient for the Court to reverse its earlier conclusion that "the questions of ... fact common to class members predominate over any questions affecting only individual members" and that "a class action is

---

46 (the jury "must consider Prosperity's capitalization in each of the twenty years that it has been operating") at 39-40 ("it is clear that there have been significant variations throughout Prosperity's twenty-year history."). Under this method, Prosperity may have been a sham at certain points of time, related to certain loans, but not others. This is nonsensical and flies in the face of the Court's previous explanation that:

> The gravamen of the sham-ABA claim is that Prosperity is per se illegal under RESPA because it is not a bona fide provider of settlement services. As the focus of that claim is confined exclusively to the nature of Prosperity, all borrowers who used Prosperity will have the same claim and will have to overcome the same defenses. Thus, as goes the sham-ABA allegation of the Named Minter Plaintiffs, so goes the sham-ABA allegation of the entire Timely Class.

ECF No. 253 at 57.

14

superior to other available methods for fairly and efficiently adjudicating [this] controversy."  Fed. R. Civ. P. 23(b).

### b. The Timely Class Is Overbroad

While the Court will not accept Defendants' invitation to decertify the Timely Class, it is sensitive to Defendants' concern that the Timely Class is overbroad.  At oral argument, Defendants clearly highlighted relevant distinctions between Plaintiffs' broker theory and sham theory which are not reflected in the class definition.  As to Plaintiffs' sham theory, Defendants argue that the class is overbroad to the extent that it includes individuals who were not referred to Prosperity by Long & Foster.  They reason that because the basic premise under that theory is that Prosperity was created as a sham entity to funnel referral fees to Long & Foster, only individuals who were referred to Prosperity by Long & Foster would be able to recover under that theory.  ECF No. 479-1 at 30.  Plaintiffs' response to that argument essentially confirms its validity; they counter that Defendants' argument fails because "every one of Prosperity's loans was the subject of a (non-disclosed) ABA referral – <u>from Prosperity as broker to Wells Fargo as table-funded lender</u>."  ECF No. 492 at 45 (emphasis in original).  That referral, however, is relevant to Plaintiffs' broker theory, not to their sham theory.

15

It is true, as Plaintiffs observe, that when the Court issued its initial certification decision in 2011, it opined that the "gravamen" or "focus" of Plaintiffs' sham claim was whether Prosperity was a bona fide provider of settlement services and that "'all borrowers who used Prosperity will have the same claim and will have to overcome the same defenses. Thus, as goes the sham-ABA allegation of the Named Minter Plaintiffs, so goes the sham-ABA allegation of the entire [Timely] Class.'" ECF No. 492 at 39 (quoting ECF No. 253 at 57). That observation was not made, however, in response to any argument regarding Long & Foster-referred borrowers, but simply to note that the determination of Prosperity's legitimacy <u>vel non</u> under the HUD Ten Factor Test would be typical across the class and across time. See <u>supra</u>, n.7. As Plaintiffs also observe, later in that same opinion, "the Court declined to certify a sub-class of Long & Foster customers, holding that doing so 'would unnecessarily complicate and obscure the larger question regarding the legitimacy or illegitimacy of Prosperity.'" <u>Id.</u> (quoting ECF No. 253 at 59). This quoted language, however, related to the Court's decision not to certify a Class for a claim under § 8(a).

The Court agrees with Defendants that, unlike Plaintiffs' broker theory, only those referred to Prosperity by Long & Foster would be able to prevail under Plaintiffs' sham theory.

While it is conceivable that a jury could evaluate the merits of a sham theory applicable to a class composed only of those who were referred by Long & Foster at the same time as it considers a broker theory applicable to a different and much broader class, the Court is deeply concerned about adding any more complexity to the jury's task than it already bears.  For this reason, the Court will limit the class of Plaintiffs to those who were referred to Prosperity by Long & Foster.

Under Plaintiffs' broker theory, Defendants argue that the class is overbroad because it includes individuals whose loans were not transferred to Wells Fargo, but were sold to other investors.  ECF No. 479-1 at 25-26.  Plaintiffs do not take on Defendants' argument directly, but suggest that Wells Fargo decided which loans to keep and which to transfer to third-party investors, which is an indication of Wells Fargo's control over Prosperity's lending, funding, and assignment process.  ECF No. 492 at 37-38.  The Court agrees with Defendants.  Because table-funding requires that the loan be assigned to the person advancing the funds, 24 C.F.R. § 3500.2(b), those whose loans were sold directly – not by way of a preliminary transfer to Wells Fargo – to third-party investors, plainly cannot establish that their loans were table-funded by Wells Fargo.  The Court will therefore modify the Timely Class to exclude those individuals.

The Court notes that, by limiting the Timely Class to those individuals who were referred to Prosperity by Long & Foster and who then had their loans passed from Prosperity to Wells Fargo, this resulting class best mirrors the central core of Plaintiffs' theories and arguments, namely, that Long & Foster and Wells Fargo created Prosperity simply as a scheme to direct mortgage loans from Long & Foster clients to Wells Fargo. Such schemes are the obvious targets of RESPA, and thus the claims of this more narrowly-tailored class are consistent with both Plaintiffs' central theory and RESPA's purpose.

## III. CONCLUSION

For the foregoing reasons, Defendants' Conditional Motion Pursuant to 28 U.S.C § 1292(b) to Certify a Question of Law to the Fourth Circuit Court of Appeals and Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, will be denied, and Defendants' Motion to Decertify Tolling and Timely Classes will be granted, in part, and denied, in part.

A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: April 26, 2013